# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00172-CV

**Debra Ann Saldarriaga, Appellant**

**v.**

**Alejandro Saldarriaga, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. 99-12202, HONORABLE PETER M. LOWRY, JUDGE PRESIDING

## O P I N I O N

This case asks whether the probate code's procedural requirements for the appointment of a guardian can be circumvented by labeling a guardian a "next friend." We hold that they cannot. In this divorce case, the district court appointed a "next friend" for wife, Debra Saldarriaga, on the motion of Debra's attorney because of the attorney's belief that Debra was not competent to make her own decisions with respect to the divorce suit. The next friend entered into a Rule 11 agreement with Debra's husband, Alejandro Saldarriaga, settling the Saldarriagas' financial and parent-child relationships. A second district court approved the Rule 11 agreement over Debra's objections and proceeded to enter a final divorce decree. In that district court, Debra

challenged the appointment of the next friend, the approval of the Rule 11 agreement entered into by the next friend, and the entry of the decree, asserting that her due process rights were violated by the improper appointment of the next friend. She also challenged the district court's denial of her motion to abate the divorce proceedings while a guardianship proceeding was pending in the probate court. She now asserts those same complaints on appeal. We will reverse the orders of the district courts and remand for proceedings consistent with this opinion.

## BACKGROUND

Alejandro Saldarriaga filed for divorce in October 1999. About three years later, Debra's lawyer, Lisa Zintsmaster Verhaeghe,[1] filed a motion for the appointment of an attorney ad litem for Debra because of her concern that Debra was mentally incompetent to participate in the decision-making process necessary to finalize the divorce. Ms. Zintsmaster filed this motion believing it was her duty under rule 1.02(g) of the Texas Disciplinary Rules of Professional Conduct. *See* Tex. Disciplinary R. Prof'l Conduct 1.02(g), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Tex. State Bar R. art. X, § 9) ("A lawyer shall take reasonable action to secure the appointment of a guardian or other legal representative for . . . a client whenever the lawyer reasonably believes that the client lacks legal competence and that such action should be taken to protect the client."). About two weeks later, Ms. Zintsmaster filed another motion, this one entitled "Motion for Appointment of Attorney Ad Litem, and/or Guardian Ad Litem, and/or Next Friend."

---

[1] We will refer to Ms. Zintsmaster Verhaeghe as "Ms. Zintsmaster" throughout this opinion because she appears to have changed her name to that at some point in the proceedings below.

This motion was filed half an hour before the scheduled hearing for the previous motion was to take place; at the hearing both motions were considered together.

Only two people testified at the hearing: Debra's brother, Lou Carter, and attorney Jerry Jones, who at the conclusion of the hearing was appointed next friend for Debra. Mr. Jones had a probate and estate planning practice but minimal family-law experience; he had been referred to Ms. Zintsmaster through a mutual colleague. Additionally, Ms. Zintsmaster submitted and read into evidence a deposition from Dr. David Flume, Debra's treating psychiatrist for approximately four years. Dr. Flume had diagnosed Debra with major depression, dependent personality disorder, attention deficit disorder, and obsessive compulsive disorder. In his deposition, Dr. Flume stated, "I think Deb[ra] apparently cannot take care of herself," and "I think it would be much better to have an intermediary to help her make proper decisions. I think on her own she is not able to make decisions." Debra was apparently present at the hearing,[2] but she was not represented by counsel other than Ms. Zintsmaster, who was seeking the appointment. Debra was not called to testify, did not engage in cross-examination, and did not say anything on record at the hearing.

The hearing was initially conducted on the premise that a guardian was to be appointed for Debra. About half-way through the hearing, the focus shifted to the appointment of a next friend, based primarily on Mr. Jones's testimony that the district court did not have the authority to appoint a guardian:

---

[2] It is not clear from the record whether Debra actually was present. Alejandro's brief states that she was present, and Debra's brief does not rebut the assertion.

3

I'm not sure this Court has the . . . authority to appoint me as guardian. I think that's strictly within the province of the probate court. I think this Court could appoint me attorney ad litem, guardian ad litem, or I think the Court could find incapacity and allow me to act as next friend or could tell me to go downstairs and get a guardianship in the probate court, but I think it could be a procedural mistake to actually have this Court appoint somebody guardian.

. . . .

My impression is that this Court can appoint a guardian ad litem, and the problem is that—as I understand the guardian ad litem, is somebody who advises the Court as to what's in the best interest of a minor or possibly an incapacitated person, and I thought what we were looking for was somebody to make decisions for—as your client, and I'm not sure that the ad litems accomplish that.

. . . .

A guardianship might be a better solution here. I think it would take a little longer. You'd have to make the application. They have posting requirements. We'd have to get waivers or service on all of the—all the family members and make sure everybody knew about it.

The district judge stated that he had never seen a motion like Ms. Zintsmaster's before and that Ms. Zintsmaster was going to "have to lead [him] through it." Alejandro's attorney similarly admitted ignorance with respect to the appointment of a "next friend." Mr. Jones didn't think he had ever been a next friend, though he had "been involved in the next friend [process]" and had "used the technique," but never "in midstream." Although the terminology shifted during the hearing from "guardian" to "next friend," Ms. Zintsmaster and Mr. Jones continued to refer to the probate code's definition of "incapacitated person" to describe why Debra needed a representative. *See* Tex. Prob. Code Ann. § 3(p)(2) (West 2003). An incapacitated person is an adult "who, because of a physical or mental condition, is substantially unable to provide food, clothing, or shelter for . . . herself, to care for the individual's own physical health, or to manage the individual's own

4

financial affairs." *Id.* Despite the cautionary advice of Mr. Jones, Ms. Zintsmaster apparently did not want to wait and follow the requirements to seek a guardianship in probate court. She proceeded to introduce evidence of Debra's incapacity, asking the district court to take the short-cut of appointing a next friend because the court lacked authority to appoint a guardian. The district court appointed Mr. Jones as next friend for Debra at the conclusion of this hearing.

Shortly after he was appointed next friend, Mr. Jones took the precaution of filing a guardianship proceeding on Debra's behalf in the probate court. Peter Meeker was appointed Debra's attorney ad litem in that proceeding. Nevertheless, while that proceeding was pending, Mr. Jones entered into a Rule 11 agreement with Alejandro, settling the Saldarriagas' financial and parent-child affairs, against Debra's wishes. Some time after the appointment of Mr. Jones as next friend, Debra retained her third attorney with respect to the divorce, Rick Kennon, who proceeded to file a motion in the district court to set aside the appointment of the next friend and to set aside the Rule 11 agreement. He also filed a plea in abatement, asking the district court to await the results of the pending guardianship proceeding before finalizing the divorce based on the Rule 11 agreement. A hearing was held in a second district court[3] to consider approving the Rule 11 agreement in a final divorce decree and to hear Mr. Kennon's motions. At the hearing, Mr. Meeker and Mr. Kennon asked that the divorce proceedings be abated pending the outcome of the guardianship proceedings. The next friend Mr. Jones testified that he would have preferred a guardian be appointed for Debra, rather than a next friend. All the parties stipulated that Debra did

---

[3] This hearing was held in the district court for the 126th judicial district instead of the 201st district, in which the hearing appointing the next friend was held and all other motions pertaining to the divorce had been filed; different judges presided over the respective hearings.

not consent to the Rule 11 agreement. Mr. Jones explained to the court why a next friend, to the exclusion of another kind of representative, had been appointed at the earlier hearing:

> Attorney ad litem was not the correct solution. She's already got a lawyer [Ms. Zintsmaster]. Attorney ad litem couldn't settle things on her behalf over her objection. A guardian was going to require going downstairs [to the probate court]. The Judge was particularly concerned about the cost of it, and there was certainly the delay issue. . . . A guardian ad litem might be the correct solution. Next friend seemed to be, under Rule 44 [of the Texas Rules of Civil Procedure], seemed to be a correct answer.

Despite the efforts of Mr. Kennon and Mr. Meeker, the district court refused to abate the proceedings or set aside the Rule 11 agreement or the appointment of the next friend. The court then entered a final decree of divorce, incorporating the Rule 11 agreement signed by Mr. Jones as Debra's "next friend."

After the decree was entered, Mr. Kennon filed a motion for a new trial, which was denied. He also filed a motion to discharge Debra's next friend, which the district court granted. Attached to this motion was a certificate of medical examination completed by Dr. James R. Van Norman, prepared for the pending guardianship proceeding. Dr. Norman's certificate opined that Debra was not incapacitated according to the definition in the probate code. The guardianship proceeding was subsequently dismissed. Debra brought this appeal, urging that the district courts erred twice: first in appointing a next friend without affording her procedural due process, and second in denying her motions to set aside the appointment and the Rule 11 agreement and to abate the divorce proceedings.

6

**DISCUSSION**

*Standard of review*

We review the appointment of a guardian under an abuse of discretion standard. *See Trimble v. Texas Dep't of Protective & Regulatory Serv.*, 981 S.W.2d 211, 214 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *Eddins v. Estate of Sievers*, 789 S.W.2d 706, 707 (Tex. App.—Austin 1990, no writ). A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). A trial court's erroneous legal conclusion, even in an unsettled area of law, is an abuse of discretion. *Huie v. DeShazo*, 922 S.W.2d 920, 927-28 (Tex. 1996).

*Appointment of next friend*

The district court appointed Mr. Jones as next friend under the authority of rule of civil procedure 44 and section 202.001(a)(2) of the family code. *See* Tex. R. Civ. P. 44; Tex. Fam. Code Ann. § 202.001(a)(2) (West 2002). The order reads: "[I]t is necessary and appropriate for the Court to appoint Respondent a Next Friend to aid her in the conclusion of the underlying lawsuit under Tex. R. Civ. Proc. Rule 44 and Tex. Fam. Code § 202.001(a)(2)." Rule 44 discusses the possibility of appointing a next friend, the conditions that might warrant such appointment, and the powers enjoyed by a next friend:

> Minors, lunatics, idiots, or persons non compos mentis who have no legal guardian may sue and be represented by "next friend" under the following rules:

7

(1) Such next friend shall have the same rights concerning such suits as guardians have, but shall give security for costs, or affidavits in lieu thereof, when required.

(2) Such next friend or his attorney of record may with the approval of the court compromise suits and agree to judgments, and such judgments, agreements and compromises, when approved by the court, shall be forever binding and conclusive upon the party plaintiff in such suit.

Tex. R. Civ. P. 44. We conclude that this rule does not provide for any kind of procedure for the *appointment* of a next friend. It merely gives minors and incapacitated persons the ability to sue and appear by a representative. It is clear that a child's parent may file a suit on the child's behalf as next friend without the need for a formal adjudication of the child's infancy because there is rarely a fact issue as to whether a person is a minor. However, there will almost always be a fact issue as to whether someone is a person non compos mentis (mentally incompetent).[4] The rule does not prescribe the *manner* in which it must be determined whether someone who is not a minor is incapacitated. We have found no procedural standards in statutes or case law for the appointment of a next friend. It is legal error to conclude from rule 44 that an attorney may step in as next friend for a grown woman in the middle of a lawsuit without a formal adjudication of incapacity. The district court erred in relying on rule 44 to support its appointment of Mr. Jones as Debra's next friend.

The cited family code provision is completely inapplicable to the Saldarriagas' situation. That section allows for the appointment of a "friend of the court" on the court's own

---

[4] The briefings and proceedings below used the term "incapacitated" interchangeably with "mentally incompetent." Because Ms. Zintsmaster and the district courts proceeded under the probate code's definition of "incapacitated," we shall proceed using that term.

motion "[a]fter an order for child support or possession of or access to a child has been rendered." Tex. Fam. Code Ann. § 202.001(a)(2). A "friend of the court" is not the same as a "next friend." The sections following section 202.001 reveal that a friend of the court is used to aid in the enforcement of child custody and support orders. *See id.* §§ 202.002-.005 (West 2002) (friend of court may coordinate nonjudicial efforts to improve compliance with support or possession order; court registry shall report to friend of court delinquencies and violations of order). This is not a suit to enforce child-custody or support orders; it is a divorce.[5] Thus, the district court improperly relied on the family code to support its appointment of a next friend.

Having determined that the district court's legal conclusions supporting its appointment of the next friend were erroneous, we proceed to consider whether the appointment met basic due process requirements. Debra contends that her procedural due process rights were denied because she was not personally served with the two motions seeking appointment of a guardian or next friend, was not properly notified of her right to contest the motions, was not appointed an attorney ad litem to represent her interests, and had insufficient time to prepare for the hearing. She asserts that the due process for the appointment of a next friend under these circumstances should parallel the procedures established in the probate code for the appointment of a guardian. We agree.

Rule 44 gives a next friend the same rights as a guardian, which necessarily include the ability to make any decision with respect to a lawsuit on behalf of the ward, including a settlement decision. *See* Tex. R. Civ. P. 44; Tex. Prob. Code Ann. §§ 768, 774(a)(4) (West Supp.

_____

[5] At the time of the final decree, the Saldarriagas did have one minor child. The Rule 11 agreement and final decree addressed the possession, visitation, and support of this child.

9

2004). We find it incongruous that a next friend would have the same *rights* as a guardian but not be bound by the same *procedure* for appointment. If there is no difference between the actions a next friend and a guardian may take, then there should correspondingly be no difference between the procedural safeguards that govern how, when, and under what circumstances a person may be appointed a next friend or a guardian based on the alleged incapacity of the proposed ward. Whatever title was bestowed upon Mr. Jones, the effect was that his appointment removed Debra's legal ability to make decisions for herself in the pending divorce action. He was *effectively* the guardian of Debra for the purpose of concluding the divorce litigation. If Ms. Zintsmaster believed that Debra was incompetent, the proper procedure would have been to ask the probate court to find her incapacitated and appoint a guardian.

The probate code contains uniform, strict procedural safeguards to protect a person's liberty and property interests before a court may take the drastic action of removing her ability to make her own legal decisions. The consequences are too great to risk a haphazard determination of whether a person is incapacitated. The probate code's procedural requirements for the appointment of a guardian include numerous protections: a sheriff or other officer must personally serve citation upon the proposed ward to appear and answer the application; the court shall appoint an attorney ad litem to protect the interests of the proposed ward; the proposed ward is entitled to a jury trial on request; and the court shall make a reasonable effort to consider the incapacitated person's preference of the person to be appointed guardian and shall give due consideration to such preference. Tex. Prob. Code Ann. § 633 (West Supp. 2004), §§ 646, 685, 689 (West 2003). Likewise, there are procedural protections when a temporary guardianship is sought. *See id.* § 875

10

(West Supp. 2004) (notice must be served on proposed ward describing rights of parties and date, time, place, purpose, and possible consequences of hearing on application; court must appoint attorney to represent proposed ward who does not already have independent counsel; proposed ward has right to present evidence and cross-examine witnesses; and court shall assign only those powers and duties that are necessary to protect proposed ward against imminent dangers to ward's health or safety). The procedure followed by the district court did not afford Debra any of these protections.

The probate code also requires that a physician have examined a potential ward no earlier than 120 days before the filing of the guardianship application. *See id.* § 687(a) (West Supp. 2004). Debra's most recent visit with Dr. Flume was on May 30, 2002. Ms. Zintsmaster filed her first motion, styled "Motion for Appointment of Attorney Ad Litem," on September 20, 2002. Although filed within 120 days of Dr. Flume's last visit with Debra, this motion cannot be characterized as a proper guardianship application because it did not ask for a guardian or next friend, but merely an "attorney ad litem." The second of Ms. Zintsmaster's motions, which for the first time mentions that a guardian or next friend is sought, was filed on October 3, more than 120 days after the last physician's visit. Moreover, the contents of Dr. Flume's letter did not satisfy the probate code's requirements. A physician's letter or certificate must accompany a guardianship application and contain the following: (1) a description of the nature and degree of incapacity, including the medical history if reasonably available; (2) a medical prognosis specifying the estimated severity of the incapacity; (3) a statement of how the proposed ward's ability to make or communicate responsible decisions concerning herself is affected by the person's physical or mental health; (4) a statement whether any current medication affects the demeanor of the proposed ward

11

or the proposed ward's ability to participate fully in the proceeding; and (5) a description of the precise physical and mental conditions underlying a diagnosis of senility, if applicable. *Id.* The relevant portion of Dr. Flume's six-sentence letter that accompanied Ms. Zintsmaster's motions reads: "Debbie has a severe psychiatric condition that impairs her ability to make decisions for herself. I would support a guardianship to protect her interests." This letter falls far short of the probate code's requirements.

Moreover, the district court did not have jurisdiction to consider a guardianship for Debra. "In those counties in which there is a statutory probate court, all applications, petitions, and motions regarding guardianships, mental health matters, or other matters addressed by this chapter *shall be filed and heard in the statutory probate court*."[6] *Id.* § 606(d) (West Supp. 2004) (emphasis added); *see Garland v. Garland*, 868 S.W.2d 847, 849-850 (Tex. App.—Dallas 1993, no writ). This statute is clear and unambiguous: the district court did not have jurisdiction to appoint a guardian for Debra. Mr. Jones cautioned the judge that the district court did not have the jurisdiction to impose a guardianship. Mostly due to Mr. Jones's testimony, the hearing's focus shifted to the appointment of a "next friend." However, the substance of an appointment must always override its form. *See Del Valle Indep. Sch. Dist. v. Lopez*, 845 S.W.2d 808, 809 (Tex. 1992) (character and function of injunction order control over its form). A district judge may not accomplish an unlawful end by merely calling a guardian a "next friend." If someone was going to act for Debra against her

---

[6] Travis County has one statutory probate court, Probate Court No. 1 of Travis County. Tex. Gov't Code Ann. § 25.2291(c) (West Supp. 2004).

wishes in settling the long-pending divorce, it needed to be a guardian, properly appointed by the probate court after all due process had been afforded to her.

There is some evidence in the record that Ms. Zintsmaster pursued the appointment of a representative for Debra only after Debra refused to consent to a Rule 11 agreement. Ms. Zintsmaster's in-court statements about why she was seeking a representative indicate more frustration with a difficult client than her client's incapacity as defined in the probate code: "[S]he is not capable of making the decisions by herself, and she needs to have someone appointed that operates independent of me so that we can come to a decision so that the blood-letting of this proceeding and the other proceedings can come to an end." Being unable or unwilling to make decisions in a divorce proceeding may not equate with being unable to manage one's own financial affairs, which is the definition of "incapacitated" most applicable to Debra. *See* Tex. Prob. Code Ann. § 3(p)(2). Ms. Zintsmaster may have had reasonable concerns about her client's capacity to conclude the divorce proceedings, but seeking a guardianship in the probate court or proceeding to trial to allow the court to make those hard decisions would have been the appropriate way to address such concerns. Although the court, Ms. Zintsmaster, Mr. Jones, and Alejandro's attorney were well-intentioned in desiring to end the three-year-long divorce proceedings to avoid further depleting the marital estate,[7] such concerns may not override the procedural safeguards set forth in the probate code.

---

[7] And indeed, the Rule 11 agreement signed by Mr. Jones further depleted the marital estate by awarding $110,000 in attorney's fees to Ms. Zintsmaster, who had only been representing Debra for about eight months, and $5,000 to Mr. Jones for his services as next friend.

In support of the next friend's appointment, Alejandro's argument goes too far in stating that Debra was at the next friend hearing, had the opportunity to cross-examine witnesses, and even produced her own witnesses. Although Debra may have been physically present at the hearing, it is inaccurate to say that she produced witnesses or had the opportunity to cross-examine other witnesses. It was Ms. Zintsmaster, whose agenda was clearly to have a representative appointed for Debra, who produced witnesses and cross-examined them. Debra's interest in not having a guardian appointed for herself was not represented. Debra was neither called to testify nor permitted to cross-examine witnesses. Additionally, the hearing for the appointment of a next friend or guardian was held only thirty minutes after Ms. Zintsmaster filed the motion seeking such appointment; the only advance notice Debra had was that Ms. Zintsmaster sought an *attorney ad litem* for Debra, indicated by her motion to that effect about two weeks prior to the hearing. More importantly, no attorney ad litem was appointed to represent Debra in the hearing to determine if she was incapacitated.

The district court had no jurisdiction to conduct guardianship proceedings, and proper procedures had not been followed to permit any court to proceed to a determination of Debra's incapacity. Instead, the district court attempted to appoint a next friend to effectively serve as Debra's guardian, without heeding Mr. Jones's admonitions about the probate code's requirements. *See* Tex. Prob. Code Ann. § 683(a) (West 2003). The probate code's mandate is clear: "If a court has probable cause to believe that a person . . . is an incapacitated person, and the person does not have a guardian in this state, the court shall appoint a guardian ad litem or court investigator to investigate and file an application for the appointment of a guardian of the person or estate, or both,

14

of the person believed to be incapacitated." *Id.* The district court abused its discretion by not referring the motion to the probate court to consider in a timely manner the need for a guardianship.

Similarly, the second district court should have recognized the error committed at the first hearing and granted Debra's motion to abate the divorce proceedings and await the results in the pending guardianship proceeding initiated by Mr. Jones. *See Davis v. Guerrero*, 64 S.W.3d 685, 690-692 (Tex. App.—Austin 2002, no pet.) (holding that family court should postpone entertaining motions to alter provisions in suit affecting parent-child relationship that relate to issues covered by guardianship until pending guardianship issue is resolved). We hold that both district courts abused their discretion, the first by appointing a next friend who had virtually all the powers of a guardian, and the second by approving the Rule 11 agreement entered into by the next friend over Debra's objections.[8]

## CONCLUSION

The first district court erred in appointing Mr. Jones as next friend of Debra Saldarriaga. His appointment was the effective equivalent of the appointment of a guardian or temporary guardian. The district court lacked the jurisdiction to appoint a guardian because Travis County has a statutory probate court with exclusive jurisdiction of guardianship appointments. The probate code's procedural safeguards must be followed to appoint a representative with the powers of a guardian, and that was not done in this case. The second district court should not have approved the challenged appointment of the next friend or the Rule 11 agreement the next friend negotiated

---

[8] Although we set aside the Rule 11 agreement, we do not reverse the granting of the divorce. *See O'Carolan v. Hopper*, 71 S.W.3d 529, 535 (Tex. App.—Austin 2002, no pet.).

15

against Debra's wishes and should have abated the final divorce hearing pending the outcome of the guardianship proceeding. Together, the district courts' actions appointing the next friend, overruling Debra's motions to set aside the appointment and the agreement, and incorporating the Rule 11 agreement into the final decree of divorce were erroneous. We reverse the orders of the district court and remand this cause for further proceedings consistent with this opinion. This judgment does not affect the dissolution of the marriage.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Justice Patterson concurs in the judgment only.

Reversed and Remanded

Filed: November 13, 2003

16