Opinion issued March 29, 2007

 




 






In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-06-00356-CV

____________


INTRACARE HOSPITAL NORTH AND TERRY BAUSKE, Appellants


V.


CINDY CAMPBELL, AS NEXT FRIEND AND GUARDIAN OF FRANK
BROWN, Appellee






On Appeal from the 334th District Court

Harris County, Texas

Trial Court Cause No. 2005-71529






O P I N I O N

 This is an interlocutory appeal from the partial denial of a motion to dismiss
health-care-liability claims for failure timely to file an expert report. See Tex. Civ.
Prac. & Rem. Code Ann. §§ 51.014(9) (Vernon Supp. 2006). Appellee, Cindy
Campbell, filed the relevant health-care-liability claim on behalf of her adult son,
Frank Brown, as his next friend. Campbell was later appointed Brown's guardian,
after which time she amended her petition to assert the claims as Brown's guardian. 
Campbell filed an expert report more than 120 days from the filing of her claims
asserted as Brown's next friend, but fewer than 120 days from the amendment of her
petition to show that she was Brown's guardian. We determine whether the trial court
erred in determining, in effect, that the 120-day expert-report deadline was tolled until
Campbell was appointed Brown's guardian. We reverse the order in part and remand
the cause for further proceedings consistent with this opinion.

Background


 According to Campbell's petition, on August 13, 2004, Brown, who
suffered from paranoid schizophrenia, was transferred from the facilities of appellant
IntraCare Hospital North ("IntraCare") to another adult supervisory facility. Brown
escaped while at the new facility. He was found just over two days later, disoriented,
dehydrated, hungry, sunburned, scratched, and bruised. 

 On November 4, 2005, Campbell filed her original petition against, among
others, appellants IntraCare and Terry Bauske (together, "appellants"), upon whose
advice Campbell alleged that Brown had been transferred. (1) Campbell's original
petition alleged that she sued "individually and as next friend of . . . Brown." In the
petition's factual-allegation section, Campbell alleged that Brown was "a nineteen-year old suffering from paranoid schizophrenia." Against appellants, Campbell
alleged causes of action for negligence (the duty to maintain adequate care,
supervision, and control of Brown); intentional infliction of emotional distress
(reckless failure of same duties); and medical malpractice (negligence and negligent
referral to an allegedly sub-standard facility) and sought attorney's fees and actual,
exemplary, and mental-anguish damages.

 On November 30, 2005, appellants specially excepted on the ground that
Campbell lacked the capacity to sue as the next friend of Brown, whom she had also
alleged was an adult, because Campbell was not his legal guardian. On December 1,
2005, appellants filed an unverified "Motion to Determine the Legal Capacity of
Cindy Campbell," in which they requested that the trial court order Campbell "to
produce evidence of her legal capacity to bring this suit . . ." within 10 days or,
alternatively, that Campbell's next-friend claims "be dismissed for want of legal
capacity to sue." Appellants did not plead lack of capacity in their answer. (2) The trial
court did not rule on appellants' special exceptions or motion to show capacity, nor
did it abate the case during the time that Campbell would later seek to cure her lack
of capacity through a guardianship proceeding. See Austin Nursing Ctr., Inc. v.
Lovato, 171 S.W.3d 845, 853 n.7 (Tex. 2005) (indicating that if trial court concludes
that capacity is lacking, court should abate case and give plaintiff reasonable time to
cure defect).

 On January 13, 2006, Campbell filed her first amended petition, in which
she alleged that she brought suit individually and as next friend of Brown, "an
incapacitated person," under Texas Rule of Civil Procedure 44. See Tex. R. Civ. P.
44 ("Minors, lunatics, idiots, or persons non compos mentis who have no legal
guardian may sue and be represented by 'next friend' under the following rules
. . . ."). She also alleged that her son was a "mentally incapacitated adult." Campbell
realleged the same matters relating to Brown's claims in her second amended petition,
which she filed on February 15, 2006. 


 On March 2, 2006, the Madison County Court appointed Campbell as
Brown's legal guardian. On March 20, Campbell moved the trial court in the present
case to have the guardianship recognized. She simultaneously filed a third amended
petition, alleging that her claims were asserted individually and on behalf of
Brown--both as his guardian and his next friend. On April 4, 2006, the trial court
signed an agreed order recognizing Campbell's guardianship of Brown.

 On March 6, 2006--after Campbell had been appointed Brown's guardian,
but before she had amended her petition to allege that guardianship--appellants
moved to dismiss Brown's and Campbell's claims against them for Campbell's failure
to serve an expert report on them within 120 days of the claim's filing. (3) See Act of
June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 23.02(a), (d), 2003 Tex. Gen.
Laws 847, 864, 875, 884, 898-99 (requiring claimant asserting health-care-liability
claim to serve expert report on opposing parties within 120 days of claim's filing;
further providing that, if expert report is not timely served, court must dismiss such
claim with prejudice upon defendant's motion), (4) amended by Act of May 18, 2005,
79th Leg., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (current version at Tex.
Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon Supp. 2006)). Campbell responded
that Brown's claims were not properly before the trial court until March 20,
2006--when she amended her petition to assert those claims as Brown's
guardian--because she had not had capacity to represent Brown in the lawsuit as his
next friend and thus could not properly have asserted any claims on his behalf before
then. Campbell concluded that the 120-day deadline to file the expert report for
Brown should thus be calculated from the time that "Brown, through Guardian, was
properly brought before the Court." 

 In contrast, appellants responded that the 120-day deadline should be
calculated from the date of the filing of Brown's claims, regardless of whether
Campbell had capacity to assert those claims at that time, because Campbell later
cured her lack of capacity through the guardianship proceeding. Analogizing to case
law on the statute of limitations--in which courts have held that claims filed without
capacity, but before limitations runs, are considered timely even when capacity is not
cured until after limitations runs--appellants argued that the curing of capacity did
not restart the 120-day deadline, but required instead that the timeline for filing the
report "relate back" to the date of the claim's original filing. Appellants also argued
that, even if the guardianship extended the time to file an expert report on Brown's
behalf, the guardianship could have had no effect on Campbell's claims brought in
her individual capacity.

 After a hearing, the trial court rendered an order granting the motion to
dismiss all of Campbell's individual claims against appellants with prejudice, but
denying the motion to dismiss with respect to Brown's health-care-liability claims
against appellants. Appellants appeal the portion of the ruling denying their motion
to dismiss Brown's health-care-liability claims that Campbell asserted on his behalf.

Standard of Review


 We generally review rulings on a motion to dismiss under section 74.351
for abuse of discretion. See Estate of Regis ex rel. McWashington v. Harris County
Hosp. Dist., 208 S.W.3d 64, 67 (Tex. App.--Houston [14th Dist.] 2006, no pet.)
(holding same in appeal of ruling under section 74.351). The ruling under review in
this case concerned a purely legal issue: whether former section 74.351(a) provides
for the 120-day expert-report deadline to restart upon the curing of the claimant's
representative's lack of capacity. We generally review questions of law like this de
novo. See Brown v. Villegas, 202 S.W.3d 803, 805 (Tex. App.--San Antonio 2006,
no pet.) ("We review the trial court's dismissal of a health care liability claim under
an abuse of discretion standard; however, to the extent that the resolution of the issue
presented requires an interpretation of [the statute] or a determination that [the
statute] applies to a claim, we review under a de novo standard."). But see Estate of
Regis ex rel. McWashington, 208 S.W.3d at 67 (describing standard of review of
section-74.351(a) ruling as abuse of discretion, although appeal involved issue of
statutory interpretation); Mokkala v. Mead, 178 S.W.3d 66, 70 (Tex. App.--Houston
[14th Dist.] 2005, pet. granted) (same). Nonetheless, a trial court has no discretion
in determining what the law is, which law governs, or how to apply the law. See
Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992). Accordingly, the standard of
review of this particular ruling is the same, regardless of whether it is described as
abuse of discretion or de novo.

The Effect of Curing Campbell's Incapacity to Sue on Brown's Behalf


 In three issues, appellants argue that the trial court erred in implicitly
determining that the 120-day deadline under former section 74.351(a) did not
commence until Campbell cured her lack of capacity by being appointed Brown's
guardian. Because the parties do not dispute that Campbell lacked legal capacity to
sue as her adult son's next friend and that her appointment as his legal guardian cured
that defect, we, too, assume without deciding that she lacked capacity to sue until she
was appointed his guardian by the county court. See also Saldarriaga v. Saldarriaga,
121 S.W.3d 493, 499 (Tex. App.--Austin 2003, no pet.) (holding that next friend
must be appointed for allegedly incompetent adult under procedural safeguards
applicable to guardianships).

A. Discussion

 "'[A] party has capacity when it has the legal authority to act, regardless of
whether it has a justiciable interest in the controversy.'" Coastal Liquids Transp.,
L.P. v. Harris County Appraisal Dist., 46 S.W.3d 880, 884 (Tex. 2001) (emphasis in
original) (quoting Nootsie, Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d
659, 661 (Tex. 1996)). A plaintiff's lack of capacity to bring suit on another's behalf
does not deprive the trial court of subject-matter jurisdiction over the suit, and a
challenge to the plaintiff's capacity may thus be waived. Compare Coastal Liquids
Transp., L.P., 46 S.W.3d at 884 (providing that challenge to plaintiff's lack of
capacity can be waived), and Safeway Stores, Inc. of Tex. v. Rutherford, 130 Tex.
465, 469, 111 S.W.2d 688, 690 (1938) (concluding that judgment in favor of minor
suing individually, rather than through next friend, would not have been void), with
Browning v. Placke, 698 S.W.2d 362, 363 (Tex. 1985) (indicating that judgment is
void when, among other things, it is apparent that court rendering judgment "had . . .
no jurisdiction of the subject matter"), and Saudi v. Brieven, 176 S.W.3d 108, 113
(Tex. App.--Houston [1st Dist.] 2004, pet. denied) ("Lack of subject-matter
jurisdiction is fundamental error that may be recognized by the appellate court, sua
sponte, or raised by a party, by appellate challenge, for the first time on appeal."); see
Tex. R. Civ. P. 90, 93(1), (2).

 "[M]inors and incompetents are considered to be under a legal disability and
are therefore unable to sue or be sued in their individual capacities; such persons are
required to appear in court through a legal guardian, a 'next friend,' or a guardian ad
litem." Lovato, 171 S.W.3d at 849. A next friend is "'[o]ne who, without being
regularly appointed guardian, acts for the benefit of'" one who is under a legal
disability to act. Latcholia v. Tex. Employers Ins. Ass'n, 167 S.W.2d 164, 169 (Tex.
1942) (op. on reh'g).

 Former section 74.351(a), which is applicable to this cause, provides that
a "claimant" asserting a health-care-liability claim must serve the required expert
report not later than the 120th day after the date that the claim was filed. See former
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (then providing that date of claim's
filing was triggering date; currently providing that date of petition's filing is
triggering date). A claimant is defined as "a person . . . seeking or who has sought
recovery of damages in a health care liability claim." Id. at § 74.001(a)(2) (Vernon
2006). Appellants argue that, with the exception of Campbell's individual claims,
which have been dismissed and are not at issue in this appeal, "[t]here has been one
'claim' filed by only one 'claimant' in this matter, and that claim was initially
asserted in Plaintiff's Original Petition filed on November 4, 2005 [appts' br., p. 11]." 
We agree. The real party plaintiff in a lawsuit asserted by either a next friend or a
guardian is the incompetent person. Gracia v. RC Cola-7-Up Bottling Co., 667
S.W.2d 517, 519 (Tex. 1984) (suit by next friend); Rutherford, 130 Tex. at 467, 111
S.W.2d at 689 (same); Wimberly v. Parish, 381 S.W.2d 135, 136 (Tex. Civ.
App.--Beaumont 1964, writ ref'd n.r.e.) (guardianship). When Campbell asserted
claims on behalf of Brown--whether mistakenly as his next friend or, later and
correctly, as his actual guardian--Brown was the real party plaintiff. Thus, Brown
has at all times been the true "claimant" under former section 74.351. See Wheat v.
Montgomery, 560 S.W.2d 767, 768 (Tex. Civ. App.--El Paso 1977, no writ) (in
dictum, indicating that change in representative's capacity from next friend to
guardian was not change in plaintiff, but merely change in capacity of representative).

 Nonetheless, Campbell asserts that because she lacked capacity to represent
Brown before she was appointed his legal guardian, Brown could not have been a
party plaintiff, and thus could not have been a "claimant" for purposes of former
section 74.351, until she had actually obtained the capacity to represent him. That is,
Campbell views Brown as having asserted his health-care-liability claim for the first
time only afer the person through whom he asserted that claim (Campbell) had
obtained the actual capacity to represent him. Appellants respond by relying by
analogy on the line of Texas Supreme Court authority that, when a petition alleging
a representative capacity that is actually lacking is filed before the statute of
limitations expires, and the capacity problem is cured after limitations passes (but no
new claims are asserted), the plaintiff's post-limitations capacity cures her pre-limitations lack thereof. See Lovato, 171 S.W.3d at 851, 853 ("The estate
commenced the suit before limitations expired; [Plaintiff] cured the defect in her
capacity before the case was dismissed. Under those circumstances, the estate . . .
was ultimately represented by a person with capacity to pursue the claim on its
behalf."); accord Lorentz v. Dunn, 171 S.W.3d 854, 856 (Tex. 2005) (following
Lovato).

 We agree with appellants that Lovato and Lorentz, although not fully on
point, support the conclusion that Campbell's expert report was untimely. If a claim
for which the plaintiff lacks capacity to sue is deemed cured by the representative's
later obtaining capacity, so that limitations runs from the date of the claim's first
filing (rather than from the date of the cure), then the same should be true for a
health-care-liability claim brought by one asserting, but actually lacking, capacity to
sue: upon cure, it is as if the claim had originally been brought in the correct
capacity--i.e., the corrected capacity "relates back" to the claim's original filing--so
that the 120-day deadline began running from the date of the claim's filing, rather
than from the date of the cure. 

 We recognize that the circumstances of Lovato and Lorentz differ from
those present here in that, among other things, those courts were considering
limitations, and the application of the relation-back doctrine in those cases benefitted
the plaintiffs. Nevertheless, the basic instruction of Lovato and Lorentz is that, if a
plaintiff cures her capacity within a reasonable time, it is as if, from the very
beginning of the suit, her capacity had never been lacking. That basic instruction
supports our conclusion here. Moreover, it is well-settled both that the lack of the
plaintiff's capacity to sue on behalf of another can be waived and that a judgment
rendered for one whose plaintiff-representative lacked capacity is not void. See, e.g.,
Coastal Liquids Transp., L.P., 46 S.W.3d at 884 (providing that challenge to
plaintiff's lack of capacity can be waived); cf. Rutherford, 130 Tex. at 469, 111
S.W.2d at 690 (concluding that judgment in favor of minor suing individually, rather
than through next friend, would not have been void). Accordingly, had appellants
never objected to Campbell's lack of capacity to assert Brown's claims, and had
Campbell never sought to cure that deficiency, any judgment rendered on those
claims would have been valid despite her lack of capacity. There is also no question
that, under those circumstances, former section 74.351(a)'s expert-report deadline
would have been calculated from the date that Campbell filed Brown's
claims--regardless of whether she had actual capacity to assert them when they were
filed. Former section 74.351(a)'s expert-report deadline should not have a different
starting date simply because Campbell eventually cured her lack of capacity.

 Additionally, the purposes behind former section 74.351(a)'s adoption were,
among other things, to remove unwarranted delay and expense, to accelerate the
disposition of non-meritorious cases, and to give hard-and-fast deadlines for the
serving of expert reports. See Mokkala, 178 S.W.3d at 74-75 (considering former
section 74.351(a) and quoting from legislative record). If the expert-report deadline
were allowed to restart at any time that capacity is cured--even though more than 120
days had elapsed from the time that the claimant's representative had purported first
to assert the claim--these purposes of former section 74.351(a) would be thwarted
because the expert-report deadline could be greatly extended. Cf. id. at 76
("Allowing a plaintiff to restart the period for serving an expert report by simply
nonsuiting her health care liability claim and refiling that same claim, could
effectively expand the 120-day period to well over two years. Such a procedure is
inconsistent with the policies, goals, and statutory provisions [behind former section
74.351(a)'s adoption] set forth above.") (citations omitted). Such an extension
would, in effect, also violate the spirit (if not the letter) of former section 74.351
itself, which provides only limited means to extend the time for filing the expert
report. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (c) (Vernon Supp.
2006) (allowing for extension of 120-day deadline by written agreement of affected
parties; further providing that, if expert report is deemed not to have been timely
served because its elements were deficient, court has discretion to allow claimant 30
days to cure deficiency).

 Campbell further argues that the cases upon which appellants rely are
distinguishable because, in them, the party lacking capacity originally alleged that he
had the same type of capacity that he eventually obtained. For example, Campbell
notes that, in both Lovato and Lorentz, the plaintiffs originally alleged that they were
the estate administrators when they were not, but later actually became the estates'
administrators. See Lovato, 171 S.W.3d at 847, 853 ("In any event, it would be
pointless to require that the plaintiff file an 'amended' pleading containing the same
allegations of capacity as were stated in her original petition."); Lorentz, 171 S.W.3d
at 855. Here, in contrast, Campbell notes that she alleged originally that she was a
next friend, but she later cured that defect by becoming a guardian. 

 "[Texas Rule of Civil Procedure] 44 gives a next friend the same rights as
a guardian, which necessarily include the ability to make any decision with respect
to a lawsuit on behalf of the ward . . . ." Saldarriaga, 121 S.W.3d at 499; see Tex.
R. Civ. P. 44 (1) (so providing). Moreover, as we have stated above, the real party
plaintiff in a lawsuit asserted by either a next friend or a guardian is the incompetent
person. See Gracia, 667 S.W.2d at 519; Rutherford, 130 Tex. at 467,111 S.W.2d at
689; Wimberly, 381 S.W.2d at 136. Finally, whether one wishes to be appointed the
next friend or the guardian of an adult who has not yet been adjudged incompetent,
one must follow the same procedures, i.e., those for guardianships. See Saldarriaga,
121 S.W.3d at 498-99. For these reasons, it is immaterial that Campbell represented
herself first as next friend of Brown and then cured that deficiency through a legal
appointment under the title of guardian, rather than under the title of next friend:
whether she had filed the suit as next friend or as guardian, Campbell would have had
the same powers and would have attempted to represent the same person on the same
claims. Accordingly, we decline to distinguish the analogous limitations authority
on which we have relied for the reason that Campbell argues here.

B. Resolution

 Appellant asks us to determine whether Brown's claims styled as something
other than health-care-liability claims were in fact health-care-liability claims, so that
we may order all of those claims dismissed for Campbell's failure timely to file the
expert report. Campbell opposes our doing so because the issue of whether other-named claims were actually health-care-liability claims was not litigated before the
trial court.

 Appellants' motion to dismiss and their related reply implicitly treated all
of Campbell's and Brown's claims as being health-care-liability claims, praying that
the court "dismiss[] this matter" and "this case" against them. In her response to the
motion to dismiss, Campbell referred only to "[t]he medical malpractice claims
asserted in this matter." No one briefed to the trial court whether all or only some of
Brown's claims in this suit were health-care-liability claims for which former section
74.531(a) required that an expert report be served. The trial court's ruling with
respect to Brown's claims does not reveal, implicitly or expressly, whether the court
considered all of those claims to be subject to former section 74.351(a). We decline
to review a matter that was not presented to the trial court and on which we cannot
determine that the trial court ruled. Accordingly, on remand, the trial court may
determine which of Brown's claims were "health care liability claims" that must be
dismissed with prejudice for Campbell's failure timely to serve an expert report.

Conclusion


 We reverse the order of the trial court to the extent that it denied the motion
to dismiss the health-care-liability claims against appellants brought by Campbell on
behalf of Brown and remand the cause for further proceedings consistent with this
opinion.



 Tim Taft

 Justice


Panel consists of Justices Taft, Keyes, and Hanks.


Justice Keyes, dissenting. 
1. Some other defendants were eventually non-suited. Those who were not non-suited are not parties to this appeal.
2. The Texas Rules of Civil Procedure require that a defendant challenging a
plaintiff's capacity to sue raise the matter by verified pleading, if lack of
capacity is not evident from the petition. See Tex. R. Civ. P. 93(1), (2);
Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist., 46 S.W.3d
880, 885 (Tex. 2001); Nootsie, Ltd. v. Williamson County Appraisal Dist., 925
S.W.2d 659, 662 (Tex. 1996). The burden is on the defendant to challenge
capacity to sue. Austin Nursing Ctr., Inc. v. Lovato, 171 S.W.3d 845, 853 n.7
(Tex. 2005). The issues before us do not require us to determine whether
appellants could challenge capacity by the exception and motion that they filed
or whether they also had to raise the matter by verified plea.
3. Rather than filing an expert report, as required by the applicable law, Campbell
mistakenly moved for entry of cost bond in lieu thereof, as was allowed by
superseded law.
4. The version of section 74.351(a) applicable to this suit provided that the expert
report had to be served 120 days from the date that the claim was filed. See
Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 23.02(a), (d),
2003 Tex. Gen. Laws 847, 864, 875, 884, 898-99, amended by Act of May 18,
2005, 79th Leg., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (current
version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp.
2006)). The Legislature later amended section 74.351(a) to require that a
claimant serve an expert report in a health-care-liability claim not later than the
120th day after the date that the original petition was filed. See Act of May 18,
2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (current
version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp.
2006)). That amendment, however, does not apply to this lawsuit. See Act of
May 18, 2005, 79th Leg., ch. 635, § 2, 2005 Tex. Gen. Laws 1590, 1590
(providing that 2005 amendment of section 74.352(a) applies only to causes
of action that accrued on or after amendment's effective date of September 1,
2005). For simplicity's sake, we refer in the remainder of this opinion to the
version of section 74.351(a) that applies to this lawsuit as "former section
74.351(a)."