**In the GUARDIANSHIP OF Betty Joann ERICKSON, an Incapacitated Person.**

No. 06–05–00129–CV.

Court of Appeals of Texas, Texarkana.

Submitted July 26, 2006.

Decided Nov. 29, 2006.

M. Keith Dollahite, M. Keith Dollahite, PC, Kenneth E. Raney, Thigpen & Raney, PC, Tyler, Todd Tefteller, Tefteller & Pelaia, Gilmer, for appellant.

Robert D. Bennett, Allen S. Reaves, Robert D. Bennett & Associates, PC, Gilmer, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

Betty Joann Erickson (Betty) was, by all accounts, a friendly, deeply religious, and stubborn woman. Some time after her husband's death in 2002, Betty's mental capacities began to diminish with the onset of senility, though she still valued her independence. She still maintained an office at the million-dollar business she owned, though she let other people run the business. In August 2005, Betty left her office to go to a feed store. She was missing for the next thirty hours, apparently driving around East Texas before returning home confused and exhausted.

Betty's two sons, both of whom live out of state, applied to have a temporary guardian appointed for Betty. One son, Jim, was deemed ineligible to serve as Betty's guardian. On August 25, 2005, the other son, David Capps (David), was appointed Betty's temporary guardian. Challenging David for both temporary and permanent guardianship were Betty's long-time friend Victor Stolley (Stolley) and a young man who had become close to Betty since her husband's death—Betty's then-twenty-four-year-old employee, Matthew Armstrong (Armstrong).

At the conclusion of a two-day hearing, the court appointed Stolley as Betty's permanent guardian. The court later entered an explicit finding that David had cruelly "and/or negligently" treated Betty and ordered his removal as her temporary guardian. David raises two issues on appeal: (1) the legal and factual sufficiency of evidence of cruel/neglectful treatment supporting the removal of the temporary guardian of the person and the estate, and (2) the court's premature appointment of Stolley as permanent guardian of the person.[1] We find that the trial court did not

---

1. Stolley was appointed permanent guardian of Betty's estate and person. During the pendency of this appeal, Stolley was removed and Regions Bank was appointed as permanent guardian of the estate. Stolley is still the permanent guardian of Betty's person. David states that the subsequent removal of Stolley as permanent guardian of the estate "renders moot David Capps's appeal" of the order appointing Stolley permanent guardian of the estate. We thus consider that David has abandoned as moot that part of the appeal contesting the appointment of Stolley as the permanent guardian of the estate. *See*

have jurisdiction to appoint the permanent guardian and, therefore, that appointment is void. We further find that the removal of the temporary guardian was within the trial court's discretion.

**Appointment of Permanent Guardian**

The qualification of a properly appointed permanent guardian terminates a temporary guardianship. *See Blackburn v. Gantt,* 561 S.W.2d 269, 272 (Tex.Civ. App.-Houston [1st Dist.] 1978, no writ). If Stolley was properly appointed, David's first issue (the improper removal of the temporary guardian) is moot. *See In re Guardianship of Berry,* 105 S.W.3d 665, 666 (Tex.App.-Beaumont 2003, no pet.); *Douglas v. Proctor,* 559 S.W.2d 912, 913 (Tex.Civ.App.-Waco 1977, no writ). We, therefore, address David's second issue first: was the permanent guardian properly appointed? David contends the appointment of the permanent guardian of the person is void because (1) under Section 633(f) of the Texas Probate Code, the trial court was not allowed to appoint any permanent guardian until October 3, 2005, and (2) the trial court denied due process by ruling on applications and motions for permanent guardian not yet set for hearing.

A judgment is void when the trial court rendering it has no jurisdiction over the parties or subject matter. *See Cook v. Cameron,* 733 S.W.2d 137, 140 (Tex.1987); *In re Guardianship of B.A.G.,* 794 S.W.2d 510, 511 (Tex.App.-Corpus Christi 1990, no writ); *Wilkinson v. Owens,* 72 S.W.2d 330, 335 (Tex.Civ.App.-Texarkana 1932, no writ). "[A] void judgment is one entirely null within itself, and which is not susceptible of ratification or confirmation, and its nullity cannot be waived." *Easterline v. Bean,* 121 Tex. 327, 49 S.W.2d 427, 429 (1932); *accord B.A.G.,* 794 S.W.2d at 511; *Wilkinson,* 72 S.W.2d at 335. A trial

court's subject-matter jurisdiction is a question of law an appellate court reviews de novo by examining the pleadings and any other evidence relevant to the determination. *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002).

The Texas Probate Code confers jurisdiction on county courts to appoint guardians for incapacitated persons. TEX. PROB.CODE ANN. § 605 (Vernon 2003); *see also* TEX. PROB.CODE ANN. §§ 606, 677(a) (Vernon Supp.2006). As to the procedure in creating a permanent guardianship, the Probate Code provides:

> The court may not act on an application for the creation of a guardianship until the Monday following the expiration of the 10–day period beginning the date service of notice and citation has been made as provided by Subsections (b), (c), and (d)(1) of this section and the applicant has complied with Subsection (d–1) of this section.

TEX. PROB.CODE ANN. § 633(f) (Vernon Supp.2006). Section 633 does not set out optional procedures; only through compliance with Section 633 of the Texas Probate Code is the trial court's jurisdiction invoked. *See B.A.G.,* 794 S.W.2d at 512–13 (as to then Section 130E of the Texas Probate Code, now recodified at TEX. PROB. CODE ANN. § 633 (Vernon Supp.2006)); *Wilkinson,* 72 S.W.2d at 334–35; *Threatt v. Johnson,* 156 S.W. 1137, 1139 (Tex.Civ. App.-Texarkana 1913, no writ); *accord* TEX. PROB.CODE ANN. § 684(c) (Vernon 2003) ("court may not grant an application to create a guardianship unless the applicant proves each element required by this code").

Stolley and Armstrong filed and served their permanent guardian application September 19, 2005. The court could not,

*Williams v. Lara,* 52 S.W.3d 171, 184 (Tex. 2001).

under Section 633(f), act on that application until October 3, 2005, which was the Monday following the expiration of the ten-day period after service. However, the court held the hearing September 28, 2005. The court rendered judgment in open court, as required under TEX. PROB. CODE ANN. § 650 (Vernon 2003), on September 29, 2005. The court stated in open court that "Stolley is named the permanent guardian of the estate" and then clarified "[t]he person and estate." On October 3, 2005, the court signed a written order regarding its earlier judgment. For purposes of our analysis, we note that judgment in this case was rendered by the court's oral pronouncement of judgment in open court September 29, not by the later written order. *See In re Marriage of Joyner,* 196 S.W.3d 883, 886–87 (Tex.App.-Texarkana 2006, pet. filed) (written judgment subsequent to oral one in open court is "purely a ministerial act"); *see also In re Guardianship of Schellenberg,* 694 S.W.2d 50, 52 (Tex.App.-Corpus Christi 1985, no writ).

██ We find the actions from September 28 to September 29 "too early to confer on the trial court jurisdiction" to order the permanent appointment. *See In re Estate of Bean,* 120 S.W.3d 914, 919 (Tex. App.-Texarkana 2003, pet. denied); *accord Wilkinson,* 72 S.W.2d at 334. Almost 100 years ago, this Court stated of the guardianship jurisdictional requirements: "compliance with the statute is a condition precedent to the valid exercise of the power, and is jurisdictional." *Threatt,* 156 S.W. at 1139. Any attempt by the trial court to exercise the special power of appointment of a guardian without compliance with express statutory jurisdictional provisions is a nullity. *Id.*

██ Stolley asserts that the invited error doctrine prohibits David's complaint on appeal. *See Ne. Tex. Motor Lines, Inc. v.*

*Hodges,* 138 Tex. 280, 158 S.W.2d 487, 488 (1942). Stolley contends David waived any objection to the hearing of all motions on appointment of a permanent guardian on September 28 because David had the matter set for hearing. Stolley further contends that, throughout the two-day hearing, the trial court heard testimony regarding Stolley's or Armstrong's qualifications as a guardian so as to put all parties on notice of the appointment sought. We are not persuaded by Stolley's contentions.

The court had initially set hearings for September 26 and 28 on the following motions: (1) Armstrong's "Motion to Estop David Capps From Preventing Betty Joann Erickson From Attending Church"; (2) Armstrong's motion for emergency hearing to change the temporary guardian of Betty; (3) David's motion to modify agreed order (to show cause why Armstrong should not be fired, and to compel Armstrong's production of Betty's business books and records); and (4) David's motion to show cause why Armstrong and his wife, Leslie, should not be removed from the residence and property of Betty. As indicated in a letter by David's attorney, the hearings on these motions were apparently consolidated to be heard September 28. That letter stated: "This letter is to confirm with everybody that the hearing on the various motions, applications, counter-motions and counter-applications which are presently on file will be heard by the Court on Wednesday, September 28, 2005. . . ."

Stolley asserts this letter set for hearing the following additional applications, which were not previously set: (1) David's application and first amended application for appointment of permanent guardian; (2) Armstrong's application for appointment of permanent guardian of the person and estate; and (3) Armstrong and Stolley's first

amended and alternative application for appointment of permanent guardian of the person and estate.

Section 635 of the Texas Probate Code provides that a "competent person who is interested in a hearing in a guardianship proceeding, in person or by attorney, may waive in writing notice of the hearing.... A person who submits to the jurisdiction of the court in a hearing is deemed to have waived notice of the hearing." TEX. PROB. CODE ANN. § 635 (Vernon 2003). It is undisputed that all interested parties were present at the September 28 hearing. However, since guardianship entails ongoing proceedings in courts sitting in probate, the parties' presence on one matter may not necessarily serve as waiver on another. We are not convinced that, at the beginning of the hearing, either the court or counsel considered the permanent guardianship motions to be before the court in addition to the motions for temporary guardian. When the court recited which motions were before it, only David asserted any incomplete recitation:

> THE COURT: We're here on Matthew Armstrong's Motion to Change Temporary Guardian and then on David Capps' Motion to Show Cause and Removal of Armstrong from the Residence.
>
> [David's Attorney]: And there is another Motion as far as Production of Records, Show Cause on that as well.

Stolley's attorney failed to take this opportunity to include the applications for permanent guardian among the considered motions.

Since the parties understood they were eliciting testimony on a potential new temporary guardian, we are unconvinced that the parties' various references to "a guardian" throughout the hearing must necessarily contemplate "a permanent guardian." At the hearing, the few references to guardians that differentiated between permanent and temporary indicated the parties understood only temporary guardianship was before the court. David's attorney expressly noted, in closing remarks, that "we're not at permanent guardian. We're only here for the motions that were set for today." Betty's attorney ad litem stated, in his closing remarks, that "at least on a temporary basis, ... perhaps we ought to have Lee Stolley be temporary guardian for a while." The fact that the proper time had not elapsed to allow the court to conduct a permanent guardianship proceeding strengthens the argument that the parties were present September 28 for motions in regard to the temporary guardianship only.

Betty's attorney ad litem approached the hearing from the perspective of temporary guardianship. The record does not indicate that Betty and her attorney ad litem were even aware that they were participating in a proceeding that would far more drastically restrict her liberty interest. *See Saldarriaga v. Saldarriaga,* 121 S.W.3d 493, 499–500 (Tex.App.-Austin 2003, no pet.). *Compare* TEX. PROB.CODE ANN. § 875(b) (Vernon Supp.2006) (recognizing temporary guardian's limited powers and rights by noting "[t]he person retains all rights and powers that are not specifically granted to the person's temporary guardian by court order") *with* TEX. PROB.CODE ANN. § 769 (Vernon 2003) *and* TEX. PROB.CODE ANN. §§ 767, 768, 770, 770A (Vernon Supp.2006) (all entitling a permanent guardian to very broad powers and rights over a ward).

▪ Not only did Betty not consent to or waive the setting of the applications for permanent guardian, she is not allowed to waive those jurisdictional requirements. The Probate Code implies that a proposed ward may not waive jurisdictional procedures. *See* TEX. PROB.CODE ANN. § 633(e) ("A person *other than the proposed ward*

... may choose ... to waive the receipt of notice or the issuance and personal service of citation.") (Emphasis added); Tex. Prob.Code Ann. § 635 ("*A competent person who is interested in a hearing in a guardianship proceeding ... may waive in writing notice of the hearing.*") (Emphasis added). The few cases on point indicate that an interested person may not waive guardianship proceeding jurisdictional requirements on behalf of an alleged incapacitated person. *See In re Mask*, 198 S.W.3d 231, 234 n. 3 (Tex.App.-San Antonio 2006, no pet. h.) ("attempted waiver of service by an incapacitated person would be ineffective" in guardianship proceedings); *Saldarriaga*, 121 S.W.3d at 499–500; *B.A.G.*, 794 S.W.2d 510; *Ortiz v. Gutierrez*, 792 S.W.2d 118, 120 (Tex.App.-San Antonio 1989, writ dism'd as moot) (waiver of notice "not applicable to proceedings in which the mental or physical infirmity (incompetency) of an individual is alleged"); *Wilkinson*, 72 S.W.2d at 336–37.

 The basic jurisdictional safeguards of Section 633 of the Probate Code must be strictly followed to "take the drastic action of removing [an alleged incapacitated person's] ability to make her own legal decisions. The consequences are too great to risk a haphazard determination...." *Saldarriaga*, 121 S.W.3d at 499. The order appointing Stolley as permanent guardian of Betty's person was in violation of the Probate Code's procedural safeguards, which were not waived by David and not capable of being waived by Betty. The order appointing the permanent guardian of the person is void.

### Removal of David as Temporary Guardian

Since the order appointing a permanent guardian is void, we reach David's first issue—the legal and factual sufficiency of the evidence supporting his removal as Betty's temporary guardian.

 We review a court's removal of a guardian for abuse of discretion. *State ex rel. Tex. Dep't of Mental Health & Mental Retardation v. Ellison*, 914 S.W.2d 679, 682 (Tex.App.-Austin 1996, no writ); *accord Robinson v. Willingham*, No. 03–05–00221–CV, 2006 WL 903734, at *3 (Tex.App.-Austin Apr.6, 2006, no pet.) (mem.op.) (appointment of guardian reviewed for abuse of discretion); *Trimble v. Tex. Dep't of Protective & Regulatory Serv.*, 981 S.W.2d 211, 214–15 (Tex.App.-Houston [14th Dist.] 1998, no pet.); *Douglas*, 559 S.W.2d at 913 (court has authority to terminate temporary guardianship if in best interest of person and estate). Though David raises the points of error as evidentiary sufficiency, legal and factual sufficiency are not independent, reversible grounds of error in guardianship proceedings but are, instead, factors to consider in assessing whether the trial court abused its discretion. *Robinson*, 2006 WL 903734, at *3 (citing *Trimble*, 981 S.W.2d at 215).

The test for abuse of discretion is not whether in the opinion of the reviewing court the facts present an appropriate case for the trial court's action, but whether the court acted without reference to any guiding rules or principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). The mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate judge does not demonstrate such an abuse. *Downer*, 701 S.W.2d at 242. Moreover, the court of appeals cannot substitute its judgment for the trial court's reasonable judgment even if it would have reached a contrary conclusion. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992); *Buller*, 806 S.W.2d at 226. The trial court does not abuse its

discretion if some evidence reasonably supports the trial court's decision. *Furr's Supermarkets, Inc. v. Bethune,* 53 S.W.3d 375, 379 (Tex.2001).

The judgment rendered in open court did not state any grounds for removing David as temporary guardian. In fact, it only appointed Stolley as permanent guardian. Only later, in its written order, after finding that (1) David had "cruelly treated and/or negligently treated" Betty "as specified in Texas Probate Code § 761" and (2) "[t]he continuation of ... the Temporary Guardian ... would not be in the Proposed Ward's best interest," did the court state that David was removed. *See* Tex. Prob.Code Ann. § 761 (Vernon Supp.2006). The court later filed relevant findings of fact and conclusions of law:

> 5. The Court further finds by clear and convincing evidence that David Capps has cruelly treated and/or negligently treated the Proposed Ward, as specified in Texas Probate Code § 761. The testimony heard in this case clearly proved that David Capps injured the Proposed Ward by pushing her down and injuring her shoulder, threatening to take her for everything she had and leave her with nothing, and being verbally and mentally abusing to the Proposed Ward.

> 6. The Court further finds that the continuation of David Capps as Temporary Guardian or the appointment of David Capps as the Permanent Guardian would not be in the Proposed Ward's best interest....

> ....

> **CONCLUSIONS OF LAW**

> ....

> 2. There is clear and convincing evidence that David Capps has cruelly treated the Proposed Ward, as specified in Texas Probate Code § 761.

> 3. The continuation of David Capps as Temporary Guardian or the appointment of David Capps as Permanent Guardian would not be in the Proposed Ward's best interest.

■ Although the parties on appeal focus on the court's statement, in both the written order and the findings of fact and conclusions of law, that David had cruelly and/or negligently treated Betty "as specified in Texas Probate Code § 761," we note that the court never specified under which probate section it was actually removing David. Since David was a temporary, not permanent, guardian, the court could remove him under several code provisions. *See, e.g.,* Tex. Prob.Code Ann. §§ 761(a)(7), (c)(6)–(6–a) (all listing separate grounds for removal of permanent guardians involving cruel treatment or neglect); *and see* Tex. Prob.Code Ann. § 875(k) (Vernon Supp.2006) (for removing contested temporary guardian to protect the ward). The county court expressly stated in open court that it was naming a new guardian "in order to protect [Betty] and to protect the estate." While this language directly tracks the reasons for a removal under Section 875(k) of the Probate Code, "protecting the ward" is not a ground for removal of a guardian under Section 761. The court also stated—in its written order, findings of fact, and conclusions of law—that the continuation of the temporary guardianship was not in the ward's best interest, and so terminated David's guardianship of Betty again for grounds not authorized under Section 761.

■ A trial court cannot abuse its discretion if it reaches the right result, even for the wrong reason. *See In re Acevedo,* 956 S.W.2d 770 (Tex.App.-San Antonio 1997, orig. proceeding); *Hawthorne v. Guenther,* 917 S.W.2d 924, 931 (Tex.App.-Beaumont 1996, writ denied); *Luxenberg v. Marshall,* 835 S.W.2d 136,

141–42 (Tex.App.-Dallas 1992, orig. proceeding). We are not bound by an incorrect statement of the law as it applies to a case. Even though a trial court gives an incorrect reason for its decision, the trial court's assignment of a wrong reason is not reversible error. *Ace Drug Marts, Inc. v. Sterling*, 502 S.W.2d 935, 940 (Tex. Civ.App.-Corpus Christi 1973, writ ref'd n.r.e.). We, therefore, review the removal to determine if the court abused its discretion in removing David under any legally correct ground.

■■■■■ We find that the court did not abuse its discretion in removing David under Section 875(k) of the Probate Code, governing challenged and contested temporary guardianships.[2] TEX. PROB.CODE ANN. § 875(k). This section allows for the removal of a temporary guardian, via appointment of a new temporary guardian, on a challenge, whether by motion of any interested party or on the court's own motion, when "necessary to protect the proposed ward or the proposed ward's estate." TEX. PROB.CODE ANN. § 875(k). The strictly limited grounds for removal of permanent guardians in Section 761 of the Probate Code are not applicable under Section 875 to temporary guardians. In fact, a court may remove a temporary guardian on a finding that to do so is in the ward's best interest. *See Douglas*, 559 S.W.2d at 913 (so finding for then-Probate Code Section 131, now recodified at Section 875).

Beyond the hearsay (and double hearsay) evidence of the alleged pushing incident, ample evidence supports the court's determination that Betty's best interest and protection were served by removing the temporary guardian. The testimony at the hearing indicated great hostility and mistrust between David and Jim, on the one hand, and Armstrong, in particular, and his wife and Stolley on the other. Among the incidents in the first few weeks of David's temporary guardianship were the following: Stolley instructed Betty to not allow David in the house; Stolley told Betty her sons had "stolen from God" (Betty's tithe); Armstrong's wife denied David and Jim entry to Betty's house; Armstrong and/or Stolley told the home health "sitters" not to let David in the house; David instructed a new "sitter" to lie to gain entry to Betty's house. According to the evidence, David reacted to these attempts to shut him out with verbal abuse and yelling, which frightened Betty. Betty, whether because of her vulnerability to influence from the challengers to the guardianship, or for other reasons, was outspoken about her distrust of and anger toward her sons, along with her desire to not have her sons near her. The record includes a handwritten note from Betty to her sons indicating that they cause her stress. Betty's attorney ad litem indicated that he would prefer a new temporary guardian to allow space to "heal some of those wounds." The trial court was within its discretion in reasonably finding this evidence sufficient to indicate that a change would protect Betty's interest and person. We, therefore, uphold the removal of the temporary guardian in the proposed ward's interest under Section 875.

2. We emphasize that this opinion does not decide whether David did or did not "cruelly and/or negligently treat" Betty. We also note that, although the court found David had "cruelly and/or negligently" treated Betty, the statute allows removal for one who *neglects* or cruelly treats a ward. *See* TEX. PROB.CODE ANN. §§ 761(a)(7), (c)(6)–(6–a). We emphasize that this opinion does not decide whether the removal statute incorporates tort principles of negligence as a ground of removal. This *opinion is limited to deciding if the trial court* abused its discretion in removing a temporary guardian on a determination that it was in the ward's best interest.

*See* TEX. PROB.CODE ANN. § 875(k); *Douglas*, 559 S.W.2d at 913.

We recognize that it may appear that the result of our decision today is to leave Betty in a bit of a vacuum. The temporary guardian is removed and the appointment of the permanent guardian of the person is void. Nonetheless, we are certain that Betty's attorney ad litem may protect her interest in the brief period of time before the court, on remand, appoints a new guardian of the person to protect Betty's interest in accordance with this opinion.

We affirm the judgment in part and reverse in part and remand the cause to the trial court for further proceedings consistent with this opinion.