In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00104-CV


______________________________




IN THE GUARDIANSHIP OF


IVA DEE FULLER, AN INCAPACITATED PERSON




 


On Appeal from the County Court


Upshur County, Texas


Trial Court No. 178




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Cheryl Niles applied to become the temporary guardian of her ninety-two-year-old
grandmother, Iva Dee Fuller. The trial court appointed Niles as Fuller's temporary guardian (1) and
scheduled a hearing within two weeks to determine the necessity for the continuation of the
temporary guardianship. After this hearing, of which no record is included on appeal, the court
continued the temporary guardianship and scheduled a second hearing one month later to determine
the continued necessity of the temporary guardianship. At the conclusion of the second hearing, the
court terminated the temporary guardianship and stated, "Good luck Ms. Fuller. I want to say this. 
And I think you are competent." 

 Niles appeals, claiming in one point of error that the judgment is against the great weight and
preponderance of the evidence. 

A. Standard of Review 

 We review the court's decision to terminate the temporary guardianship, and its decision to
decline to further appoint a temporary guardian, for abuse of discretion. See Robinson v.
Willingham, No. 03-05-221-CV, 2006 Tex. App. LEXIS 2788, at *8 (Tex. App.--Austin Apr. 6,
2006, no pet.) (mem. op.) (review appointment of guardian for abuse of discretion); Trimble v. Tex.
Dep't of Protective & Regulatory Serv., 981 S.W.2d 211, 214-15 (Tex. App.--Houston [14th Dist.]
1998, no pet.) (appointment); cf. In re Guardianship of Erickson, 208 S.W.3d 737, 743 (Tex.
App.--Texarkana 2006, no pet.) (review removal of guardian for abuse of discretion); State ex rel.
Tex. Dep't of Mental Health & Mental Retardation v. Ellison, 914 S.W.2d 679, 682 (Tex.
App.--Austin 1996, no writ) (removal); Douglas v. Proctor, 559 S.W.2d 912, 913 (Tex.
App.--Waco 1977, no writ) (removal of temporary guardian and termination of temporary
guardianship within trial court's authority if in ward's interest). 

 The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts
present an appropriate case for the trial court's action, but whether the court acted without reference
to any guiding rules or principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42
(Tex. 1985). The mere fact that a trial court may decide a matter within its discretionary authority
differently than an appellate court does not demonstrate such an abuse. Id. at 242. Moreover, the
court of appeals cannot substitute its judgment for the trial court's reasonable judgment even if it
would have reached a contrary conclusion. Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992);
Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991). 

 Though Niles raises a factual sufficiency point of error, factual sufficiency is not an
independent, reversible ground of error in these guardianship proceeding rulings, but is, instead, a
factor to consider in assessing whether the trial court abused its discretion. See Robinson, 2006 Tex.
App. LEXIS 2788, at *10 (citing Trimble, 981 S.W.2d at 215); Erickson, 208 S.W.3d at 743. The
trial court does not abuse its discretion if some evidence reasonably supports the trial court's
decision. Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978).

B. Declining to Reappoint a Temporary Guardian and Terminating a Temporary
Guardianship


 We assess the court's refusal to reappoint Niles as temporary guardian by the guiding rules
and principles set forth in the statute. The Texas Probate Code establishes the procedures governing
temporary guardianships. See Tex. Prob. Code Ann. § 875. Temporary guardianships "may not
remain in effect for more than 60 days," Tex. Prob. Code Ann. § 875(h), and may expire by their
own terms. See Tex. Prob. Code Ann. § 875(l); see also Tex. Prob. Code Ann. §§ 878, 879
(Vernon 2003). Since Niles never applied to be Fuller's permanent guardian, her initial term as
temporary guardian statutorily terminated, or expired, at the conclusion of the hearing considering
her challenged application to continue the temporary guardianship. See Tex. Prob. Code Ann.
§ 875(l). 

 The statute provides for the appointment, or reappointment, of a temporary guardian at the
conclusion of the hearing when "the court determines that the applicant has established that there is
substantial evidence that the person is . . . [an] incapacitated person, that there is imminent danger
that the physical health or safety of the respondent will be seriously impaired, or that the respondent's
estate will be seriously damaged or dissipated unless immediate action is taken." Tex. Prob. Code
Ann. § 875(g). Indeed, on so finding, the court "shall" appoint a temporary guardian. Id. 

 A review of the evidence shows that Niles presented only one witness at the
hearing--herself--to testify to Fuller's incompetence. Niles also introduced a doctor's report. Fuller
presented the testimony of an attorney and three long-time friends that she was competent. 

 The physician's certificate summarized the doctor's opinion that Fuller was partially
incapacitated with mild to moderate early senile changes probably due to early Alzheimer's disease. 
The doctor stated, in an addendum, that he found evidence of cognitive impairment and some
associated memory loss, and that, although Fuller "most probably is able to continue living alone and
take care herself [sic] with her family and friends checking in on her regularly as they have been
doing," Fuller "does not seem to have the necessary mental faculties to prevent herself from being
vulnerable to persons trying to take advantage of her financially." Niles testified that her
grandmother had lost six income checks, although Fuller informed the court (without being sworn)
that she had used those checks to open a separate bank account free from the temporary guardian's
control. Niles further testified that Fuller had, in what Niles described as an uncharacteristic move,
given or lent an ex-son-in-law $5,000.00. In total, from December 2005 to the hearing in May 2006,
Niles stated Fuller was "missing" about $8,000.00. 

 First to testify on Fuller's behalf was Dwight Brannon, a lawyer who had prepared Fuller's
will and handled other legal matters for her. Brannon described Fuller as independent and feisty. 
He testified that, had Fuller wanted him to write a will in the months before the hearing, he would
have, with confidence in her capacity. He testified that Fuller may have physical incapacity, but "she
has the capacity to live by herself and take care of herself. Certainly, she has got to have some
assistance for transportation, may need some advice. And you know, she is at an age where her
health could fail faster than somebody, you know, thirty or forty years younger. . . . But the last time
I talked to her, she seemed to be all right to me."

 Tony Snow, who has known Fuller for over eighty years, testified that Fuller is "of good,
sound mind. She's a very talented woman. She works all the time, and she's very active." He opined
that "her mind is as good as it's ever been." Leon Loveless, who has been friends with Fuller for
twenty years, testified that, in his opinion, Fuller is not incapacitated and is capable of managing her
personal and financial affairs and "is capable of taking care of her own business." Similarly, Thomas
Hestand, who has known Fuller through church for eighteen years, testified that, in his opinion,
Fuller is not incapacitated or incompetent. He stated that, though he may disapprove of Fuller's
transactions with her ex-son-in-law, he believes she is competent to make those financial decisions. 

 We find that the record demonstrates a reasonable basis for the trial court's decision that Niles
did not prove incapacity or imminent danger to Fuller's health or estate. While the court heard
conflicting testimony regarding Fuller's capacity, the court heard some evidence that reasonably
supports its decision. Accordingly, the court did not abuse its discretion.

 We affirm the judgment.



 Jack Carter

 Justice


Date Submitted: April 24, 2007

Date Decided: May 9, 2007


1. It appears from the record that this occurred without notice and citation to Fuller and in an
ex parte proceeding. Any procedural impropriety in this method, see Tex. Prob. Code Ann. § 875
(Vernon Supp. 2006), though of concern, is not at issue in this appeal.


         Both the Sixth Amendment and the Texas Constitution confer a right to effective
representation by counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10. If counsel's
performance is ineffective, the conviction cannot stand. The Texas Court of Criminal Appeals has
held that the Texas Constitution does not impose a higher standard than the Sixth Amendment. 
Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); Hernandez v. State, 726 S.W.2d 53,
56–57 (Tex. Crim. App. 1986). The Sixth Amendment standard, established by Strickland, requires
a defendant alleging ineffective assistance of counsel to show that his or her counsel's performance
at trial was deficient and that counsel's deficient performance prejudiced his or her defense. See
Strickland v. Washington, 466 U.S. 668 (1984); see also Bone v. State, 77 S.W.3d 828, 833 (Tex.
Crim. App. 2002). 
            To satisfy the deficiency prong of the test, Thomas must prove by a preponderance of the
evidence that his counsel's representation fell below the objective standard of professional norms. 
Bone, 77 S.W.3d at 833. There is a strong presumption that counsel's performance was adequate. 
Id. The reason for this presumption is that counsel at trial is better positioned to judge matters of
strategy than an appellate court reviewing a cold record. An appellate court should not "conclude
the challenged conduct constituted deficient performance unless the conduct was so outrageous that
no competent attorney would have engaged in it." Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim.
App. 2001). An ineffective assistance of counsel claim cannot be based on a difference of opinion
concerning strategy. "[T]he defendant must prove, by a preponderance of the evidence, that there
is . . . no plausible professional reason for a specific act or omission." Bone, 77 S.W.3d at 836. 
            First, Thomas contends his trial counsel failed to suppress prejudical evidence. The State
argued at trial Thomas allowed the boys to smoke cigarettes and consume alcohol at his house. The
State presented a theory Thomas had created a "playhouse" atmosphere. To further this theory, the
State used three bottles of liquor as props to create the impression Thomas made alcohol freely
available to the boys. Thomas claims his counsel's failure to suppress the bottles resulted in
ineffective assistance. Thomas alleges the federal court suppressed the bottles based on its
interpretation of state law. When claiming ineffective assistance of counsel for failure to attempt
the suppression of evidence, an appellant must show that the motion to suppress would have been
granted. Jackson v. State, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998). A certified copy of the
federal court's ruling was not introduced into evidence. The only evidence of the suppression are
the self-serving statements made by the accused. Other than Thomas' statement that the bottles were
"outside the scope of the search warrant," there is no indication in the record as to why the bottles
were suppressed in the federal court or even if they were suppressed. "If counsel's reasons for his
conduct do not appear in the record and there is at least the possibility that the conduct could have
been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective
assistance claim on direct appeal." Ortiz v. State, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002); see
Murphy v. State, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003). Thomas' trial counsel's decision
concerning whether to challenge the admissibility of the evidence may have been a tactical decision. 
The bottles were not an essential element of any of the charges, and thus their effect is entirely
tactical. This Court should not consider the wisdom of such a strategy, since ineffective assistance
of counsel claims cannot be "built on retrospective speculation." Bone, 77 S.W.3d at 835. Thomas
has not met his burden of proving that the failure to suppress the bottles fell below the objective
standards of professional norms.
            Next, Thomas contends his trial counsel was ineffective because he failed to interview,
subpoena, or call witnesses on Thomas' behalf. Thomas alleges he provided his trial counsel with
a list of fourteen witnesses and inquired several times as to the status of his investigation. 
            We note that the failure to call witnesses may be ineffective assistance of counsel. Butler v.
State, 716 S.W.2d 48, 55 (Tex. Crim. App. 1986) (failure to present available alibi witnesses deemed
ineffective assistance of counsel). However, such witnesses must be shown to be available and to
actually benefit the defense. Id.; Bates v. State, 88 S.W.3d 724, 728 (Tex. App.—Tyler 2002, pet.
ref'd); Simms v. State, 848 S.W.2d 754, 758 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). 
            Thomas' argument fails because he failed to show that these potential witnesses were
available and that their testimony would benefit his defense. The record indicates the defense
counsel filed applications for subpoenas for several witnesses. As Thomas concedes in his affidavit,
only one witness of the original four selected appeared to testify. Thomas concedes he chose not to
call that witness. Of the other three witnesses, Thomas' affidavit makes clear that two would not
benefit the defense. Thomas wanted to subpoena one of the witnesses concerning an assault J.S. had
committed. However, evidence of juvenile adjudications and unadjudicated offenses are
inadmissible to impeach a witness. See Tex. R. Evid. 608(b), 609(d). The second witness, a school
counselor, had informed Thomas' lawyer she "wanted to see [Thomas] fry." Certainly, she does not
appear to be a beneficial witness. The third witness, a friend of Thomas' from the seminary, did not
appear for trial. Thomas alleges he "later learned from him that [the friend] never was served a
subpoena, and was waiting for some direction from my attorney." The record contains no evidence
as to what this witness' testimony would have been other than Thomas' vague assertion the friend
could have testified "against one of the prosecution witnesses on my behalf" concerning Thomas'
"helpful nature," "various ministry projects," and "friendship in the seminary." There is not
sufficient evidence in the record regarding how this witness would have benefited Thomas' defense. 
Even if the witness had beneficial testimony, Thomas' trial counsel could have "reasonably
determined that the potential benefit of additional witnesses or evidence was outweighed by the risk
of unfavorable counter-testimony." Bone, 77 S.W.3d at 835. 
            Thomas also complains about the lack of expert witnesses. The affidavit indicates his trial
counsel had questioned two psychologists and determined their testimony would not aid the defense. 
This determination is a matter of strategy, and we must defer to the judgment of trial counsel. 
Because there are plausible professional reasons for not calling additional witnesses, Thomas has
not met his burden of showing that his trial counsel's performance was deficient.
            Third, Thomas contends his trial counsel's failure to use exculpatory polygraph evidence
rendered his assistance ineffective. Thomas' attorney at the federal proceedings arranged to have a
polygraph examination conducted. At trial, the State attempted to call the polygraph operator as a
witness. The State had intended to elicit testimony of admissions allegedly made by Thomas to the
polygraph operator during a pre-test interview. Thomas asserted attorney-client privilege to prevent
the operator from testifying. Thomas contends his attorney should have allowed the operator to
testify, called his previous lawyer to rebut the operator, and introduced portions of the polygraph
examination which were allegedly exculpatory. It is a reasonable conclusion counsel made the
strategic decision that allowing the operator to testify as to Thomas' admissions would be
undesirable.
            Texas courts have long refused to permit the results of polygraph examinations to be
admitted at trial, for either the defendant or the State. Robinson v. State, 550 S.W.2d 54, 59 (Tex.
Crim. App. 1977); Long v. State, 10 S.W.3d 389, 398 (Tex. App.—Texarkana 2000, pet. ref'd). The
United States Supreme Court has held the exclusion of polygraph evidence did not unconstitutionally
abridge the right of a defendant to present a defense because "[t]here is simply no consensus that
polygraph evidence is reliable." See United States v. Scheffer, 523 U.S. 303, 309 (1998). The policy
of the exclusion is based on the inherent unreliability of a polygraph examination and its tendency
to be unduly persuasive. Marcum v. State, 983 S.W.2d 762, 765 (Tex. App.—Houston [14th Dist.]
1998, no pet.). In rare circumstances, polygraph evidence erroneously admitted at trial has "opened
the door" to further inadmissible evidence regarding polygraph results. Long, 10 S.W.3d at 399
(citing Lucas v. State, 479 S.W.2d 314, 315 (Tex. Crim. App. 1972); Patteson v. State, 633 S.W.2d
549, 552 (Tex. App.—Houston [14th Dist.] 1982, no pet.)). 
            Even if the polygraph examination could have been admitted, it may not have been
exculpatory. Thomas provides three questions and answers which may prove exculpatory
concerning the charges of inducing or promoting a sexual performance by a child. According to
Thomas, the relevant excerpts of the polygraph examination are as follows:
i.Did you ask [J.S.] to make a video of himself masturbating? (NO)
ii.Were you in the room when [J.S.] was making a video of himself? (NO)
iii.Did you ask [J.S.] to make a video for your pleasure? (NO)

While these statements may prove exculpatory concerning the sexual performance charge, the
testimony of the polygraph operator as a whole may not be exculpatory concerning the other charges. 
We do not have any testimony as to admissions which Thomas may have made. According to the
State, Thomas had made some admissions concerning the sexual assaults of J.S. and T.M. 
            The decision not to allow the testimony of the polygraph operator appears to be a tactical
decision on the part of counsel. "[T]he defendant must prove, by a preponderance of the evidence,
that there is . . . no plausible professional reason for a specific act or omission." Bone, 77 S.W.3d
at 836. Counsel may have determined that the risk of incriminating testimony by the operator
outweighed the potential exculpatory evidence. Because polygraph examinations are generally
inadmissible and the testimony of the operator may have incriminated Thomas in other ways,
Thomas has failed to prove there is no plausible professional reason for his counsel's conduct.
            Last, Thomas alleges he received ineffective assistance of counsel due to his trial counsel's
failure to effectively cross-examine the State's witnesses. We have reviewed the record and
concluded trial counsel did a thorough and adequate cross-examination of the State's witnesses. 
Thomas argues his counsel should have asked the questions Thomas had provided him concerning
the smoking by the boys at his house and x-rated movie. According to Thomas, the refusal to ask
these questions renders his trial counsel's performance deficient. This argument focuses solely on
matters of strategy. "Cross-examination is inherently risky, particularly in criminal cases where
pre-trial discovery is more limited than in civil cases. A decision not to cross-examine a witness is
often the result of wisdom acquired by experience in the combat of trial." Ryan v. State, 937 S.W.2d
93, 103 (Tex. App.—Beaumont 1996, pet. ref'd) (quoting Dannhaus v. State, 928 S.W.2d 81, 88
(Tex. App.—Houston [14th Dist.] 1996, pet. ref'd)). At times, it can be more effective to refrain
from cross-examining a damaging witness to minimize the impact of the testimony. Id. In addition
to failing to ask certain questions, Thomas complains his counsel was ineffective because he asked
certain questions which allegedly bolstered the State's case by "referring to the boys' masturbating
[as recorded] on the video, when they were not masturbating, merely exposing themselves." Counsel
was attempting to impeach J.S. concerning his claim of being forced to masturbate due to threats
made by Thomas. Counsel simply pointed out he was doing the "same thing" on the video without
any apparent threats. We cannot consider the wisdom of counsel's strategy, since ineffective
assistance of counsel claims cannot be "built on retrospective speculation." Bone, 77 S.W.3d at 833. 
Further, such a statement does not bolster the State's case, because under the statute, both exhibition
of genitals and masturbation constitute sexual conduct. See Tex. Pen. Code Ann. § 43.25 (Vernon
Supp. 2004). We conclude that trial counsel's cross-examination did not fall below the objective
standards of professional norms.
            Further, claims of ineffective assistance of counsel must be evaluated based on the totality
of the circumstances. This Court must be able to conclude that trial counsel's actions amounted to
ineffective assistance of counsel based on the totality of the circumstances. The constitutional right
to counsel does not mean errorless counsel. Ex parte Kunkle, 852 S.W.2d 499, 505 (Tex. Crim. App.
1993); Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). In the totality of the
circumstances, trial counsel's performance was not deficient. 
            The second prong of the ineffective assistance of counsel test is whether Thomas' trial was
prejudiced by his trial counsel's alleged deficiency. Texas law requires Thomas to meet both prongs
of Strickland. A defendant does not meet his or her burden by merely showing that an error had
some conceivable effect on the outcome of the trial. Strickland, 466 U.S. at 693. The defendant
must show a "reasonable probability" that, but for the error, the result of the trial would have been
different. Id. "A reasonable probability is a probability sufficient to undermine confidence in the
outcome." Thompson, 9 S.W.3d at 812. Because trial counsel's performance at trial was not
deficient, there is no need to examine the second requirement of Strickland. However, Thomas has
made no showing of how the deficient performance of trial counsel raises a reasonable probability
the result of the trial would have been different. We do not find trial counsel rendered ineffective
assistance to Thomas.
            For the reasons stated, we affirm the judgment of the trial court.
 


                                                                        Jack Carter
                                                                        Justice

Date Submitted:          February 26, 2004
Date Decided:             March 3, 2004

Do Not Publish