# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00604-CV

**Roberta "Robbie" Bosworth, Appellant**

**v.**

**Amanda Bosworth, Appellee**

## FROM THE COUNTY COURT AT LAW NO. 4 OF WILLIAMSON COUNTY
## NO. 10-0405-CP4, HONORABLE JOHN MCMASTER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Roberta "Robbie" Bosworth appeals the order dismissing her application for temporary guardianship of her adult daughter, Amanda Bosworth. Appellant contends that the dismissal is not supported by evidence and is an abuse of discretion. Finding no abuse of discretion in the trial court's ruling, we will affirm the dismissal of the guardianship application.

Appellant sought to be appointed the guardian of her 27-year-old daughter, Amanda, after Amanda left her grandmother's home in Frisco, Texas, and traveled to Austin with William Blair to marry him. The couple moved in with Blair's grandparents. Appellant asserted that her daughter was abducted by Blair and was in imminent danger, asserting that Amanda has the mental functioning level of a seven- or eight-year-old child and cannot care for herself or manage her financial affairs. Appellant alleged that Blair took Amanda's personal identification documents

planning to become the representative payee of Amanda's Social Security, disability, and Health and Community-Based Services program payments.

The county court at law held a hearing on appellant's application for temporary guardianship at which appellant, her mother, her son (Amanda's brother), and a witness who had provided training services to Amanda testified in appellant's favor. Amanda also testified and requested that the court not appoint a guardian. She provided a doctor's report in support of her competence. At the end of the hearing, the trial court dismissed appellant's application to be appointed guardian, concluding that appellant had not satisfied the requirements of Texas Probate Code section 875.

The probate code directs a court to appoint a temporary guardian if the "court is presented with substantial evidence that a person may be a minor or other incapacitated person, and the court has probable cause to believe that the person or person's estate, or both, requires the immediate appointment of a guardian . . . ." Tex. Prob. Code Ann. § 875(a) (West Supp. 2012). The court must hold a hearing to determine whether "the applicant has established that there is substantial evidence that the person is a minor or other incapacitated person, that there is imminent danger that the physical health or safety of the respondent will be seriously impaired, or that the respondent's estate will be seriously damaged or dissipated unless immediate action is taken . . . ." *Id.* § 875(g).

We review the court's decision on whether to appoint a temporary guardian for an abuse of discretion. *See Saldarriaga v. Saldarriaga*, 121 S.W.3d 493, 497 (Tex. App.—Austin 2003, no pet.); *see also Trimble v. Texas Dep't of Prot. & Regulatory Servs.*, 981 S.W.2d 211, 214 (Tex. App.—Houston [14th Dist.] 1998, no pet.). A trial court abuses its discretion when it acts in

2

an unreasonable and arbitrary manner, or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). We cannot substitute our judgment for the trial court's reasonable judgment even if we would have reached a contrary conclusion. *See Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992). An abuse of discretion does not exist where the trial court bases its decisions on conflicting evidence. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978) (cited in *In re Guardianship of Erickson*, 208 S.W.3d 737, 743 (Tex. App.—Texarkana 2006, no pet.)).

At the hearing before the trial court, appellant and her witnesses testified uniformly that, in their opinion, Amanda's diminished mental capacity put her in danger. They testified that, at best, Amanda had the mental and emotional capacity of an eight-year-old child and that her capacity diminished under stress. They testified that she could not handle her basic needs for food and shelter, could not consistently take necessary medications, and could not discern when she or others needed emergency services. They testified that she was gullible, impulsive, and subject to manipulation. They testified that she did not understand basic human physiology and sexuality, did not understand love and marriage beyond storybook-style fantasy, and had previously engaged in inappropriate interactions with strangers on the internet—one of which led to her being sexually assaulted. They further testified that Amanda barely knew Blair, had not dated him, and had never spoken of him as a boyfriend, much less as a potential husband. Appellant's witnesses testified that Amanda was in imminent danger because she did not know Blair and his family, would not be able to tell if she was being mistreated, and could not seek help if she was being mistreated. Appellant was concerned that Blair and his grandparents did not fully understand Amanda's needs and

3

could not provide a sufficiently safe environment for her. Appellant also related an interaction with Blair's family that she said illustrated the manipulation of her daughter. She came down to speak with Amanda shortly after her departure and discussed returning to North Texas to collect some belongings. Appellant testified that Blair's grandmother overheard and said, "William, tell Amanda good-bye, you will never see her again, she'll be gone, her mother will have locked her up in her room, you'll never see her." Appellant testified that Blair's grandmother's statement dissuaded Amanda from returning even briefly to her previous home. Appellant offered medical reports supporting her view of Amanda's limited capacity.

Amanda testified and presented evidence in opposition to the creation of a guardianship. She stated plainly, "I am not in danger." She testified that she prompted her departure from her grandmother's house by calling Blair to come and get her. She said she had known Blair for five years and that she told her mother that Blair proposed a month before she left with him. She said that her mother and grandmother were not happy at this prospect and told her she would lose all of her benefits. She stated that she had married Blair and wished to remain with him. She testified that she had a driver's license but did not drive near her new home because she was not familiar with the roads. She testified that she had called her lawyer several times in preparation for the hearing. She demonstrated in court the ability to dial 911 in case of an emergency. She introduced a medical report regarding the need for a guardianship from a doctor in Williamson County who, after examining Amanda, declared that she has "no disability."[1] She met with an

---

[1] Amanda testified that she met with two doctors, but produced only one report. Appellant asserts that "it is reasonable to assume that only one doctor was willing to provide a doctor's letter suitable to Amanda's cause."

Officer Harrington from a "Crisis Intervention Team" who presented her with an opportunity to leave her arrangement with Blair, which she declined to take.[2] She testified, "Yes, I do love [my mother]. But I don't want her to have a guardianship over me. I would like to be on my own and I will call her. . . . I want to stay here."

In ruling that appellant did not meet her burden to justify creating a guardianship under the probate code, the trial court did not specify a particular element of section 875 that appellant failed to prove. Appellant presented testimony from witnesses and documentary evidence from doctors regarding Amanda's diminished capacity, which Amanda countered with her testimony and a doctor's certification that she had no disability. Appellant and her witnesses testified that Amanda's capacity put her in danger—particularly when surrounded by unfamiliar people like Blair and his grandparents in an unfamiliar city. Appellant testified that she felt that Amanda's finances were at risk because Blair and his grandparents had access to her identification documents and financial accounts. But there was no evidence—beyond speculation—that Blair and his grandparents had ill motives or could not meet Amanda's needs and compensate for any lack of capacity. Likewise, there was no evidence that the taking of the identification and financial documents was anything other than necessary to ensure that Amanda had documents needed to marry and access her financial resources for her benefit. Amanda testified that she was not in danger, had demonstrated the ability to use the telephone on her own, and had been presented with opportunities to leave Blair's home and chose to stay. While the evidence may seem close to meeting the standard

---

[2] Officer Harrington was reportedly in the hallway outside the courtroom and available to testify, but the trial court opted not to hear his testimony.

from our review of the paper record, the trial court held a hearing and had opportunity to see the witnesses and gauge their credibility first-hand. Based on the record before us, we cannot say that the trial court abused its discretion by concluding that appellant failed to prove the necessary elements to support her temporary guardianship application.

We affirm.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose and Goodwin

Affirmed

Filed:   January 16, 2013

6