# Supreme Court of Texas

No. 20-0328

In the Guardianship of James E. Fairley

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

JUSTICE DEVINE, joined by Justice Blacklock, dissenting.

Today, the Court sanctions an end run around crucial safeguards the Legislature has enacted to shield proposed wards. Because proper service on a proposed ward is required whether the ward's attorney ad litem generally appears or not, I respectfully dissent.

Proposed wards in guardianship proceedings rank among the most vulnerable members of our society.[1] When determined to be incapacitated, Texas citizens must relinquish the fundamental "right to control [their] own property, liberty, and life in order 'to promote and

---

[1] *E.g.*, *In re Thetford*, 574 S.W.3d 362, 364 (Tex. 2019) ("A guardian can provide essential care for the ward. But tragically, wards are also vulnerable to neglect, abuse, and exploitation.").

protect [their] well-being."[2]  While this tradeoff is often necessary,[3] the importance of the interests at stake demands the utmost rigor.

To that end, the Legislature has erected procedural safeguards to protect proposed wards,[4] including stringent requirements for service of process.  By legislative command, the *only* persons who may personally serve a proposed ward are a sheriff, constable, or "disinterested person competent to make an oath that the citation or notice was served."[5]  No such person served James Fairley,[6] but the Court says that's perfectly fine.  In the Court's view, "technical defects in service" don't matter because Mr. Fairley's court-appointed attorney ad litem effected a

---

[2] *Id.* (quoting TEX. EST. CODE § 1001.001(a)).

[3] *See* TEX. EST. CODE § 1001.001(a) ("A court may appoint a guardian . . . only as necessary to promote and protect the well-being of the incapacitated person."); *Oyama v. California*, 332 U.S. 633, 643-44 (1948) ("The whole theory of guardianships is to protect the ward during his period of incapacity to protect himself.").

[4] *See, e.g.*, TEX. EST. CODE §§ 1054.001 ("[T]he court shall appoint an attorney ad litem to represent the proposed ward's interests."), 1101.052 ("A proposed ward is entitled to a jury trial on request."), 1101.101(a)(1) (requiring clear and convincing evidence that the ward is incapacitated), 1104.002 ("[T]he court shall make a reasonable effort to consider the incapacitated person's preference of the person to be appointed guardian and . . . give due consideration to th[at] preference[.]").

[5] *Id.* § 1051.051(b).  Of course, the Legislature has provided that service on a proposed ward may be accomplished through both personal service on the ward and service on the ward's attorney (which need not be effected in person).  *See id.* §§ 1051.051(a), .055(c); *ante* at 27 n.9.  But the Court assumes that James also wasn't properly served through his attorney ad litem.  *Ante* at 23 n.7.  Strict compliance with the heightened service requirements must occur *in some way*, but here strict compliance did not occur *at all*.

[6] *Ante* at 21-23.

2

general appearance on his behalf by not objecting to the prospective guardian's noncompliance with the statutory requirements.[7]

In my view, allowing an attorney ad litem to acquiesce to a violation of the statutory mandate is untenable, especially because a ward could not do so himself.[8] An attorney ad litem's inaction should not result in the ward receiving less than the scrupulous service *the law demands*. Holding otherwise affords inadequate protection to those whom the law manifests a clear intent to provide *enhanced protection*. While we have set aside statutes for providing *less* than due process requires,[9] we have never said courts are free to ignore statutory requirements that go *beyond* what the Court or the Constitution deems minimally necessary. If the heightened service requirements the Legislature enacted are so easy to evade, they are utterly meaningless.

But the words of a statute *must mean something*. The Legislature's requirement that a proposed ward receive personal service from a sheriff, constable, or disinterested person must advance some policy objective beyond merely providing the ward with actual notice of the pending guardianship proceeding. If personal service is all that

---

[7] *Id.* at 32.

[8] *See* TEX. EST. CODE § 1051.105; *cf. In re Guardianship of Erickson*, 208 S.W.3d 737, 742-43 (Tex. App.—Texarkana 2006, no pet.) ("The Probate Code implies that a proposed ward may not waive jurisdictional procedures." (citations omitted)).

[9] *See, e.g.*, *Sax v. Votteler*, 648 S.W.2d 661, 667 (Tex. 1983) (holding that a statute violates due process when it abolishes a right to bring a well-established common-law cause of action without providing a reasonable alternative).

3

matters, as the Court holds, the legislative decree as to who may effectuate service on a proposed ward is pointless.[10]

The Court characterizes a deviation from necessary statutory protections as a mere technicality.[11] But the fact that the right person did not serve Mr. Fairley amounts to something more than a "technical defect[] in service."[12] Technical defects would not deprive him of protections the Legislature regarded as crucial for the most vulnerable. Failing to ensure that the right person served him with notice of the guardianship proceeding does.[13]

The heightened safeguards applicable to guardianship proceedings "protect a person's liberty and property interests before a court may take the drastic action of removing [his] ability to make [his]

---

[10] Under the Texas Constitution, due process entails notice and a hearing *at a minimum*, but the Legislature may add additional protections it deems needful—as it did here. *Cf., e.g.*, *In re D.T.*, 625 S.W.3d 62, 69 (Tex. 2021) ("[T]he Texas Legislature chose to afford parents opposing state-initiated termination proceedings more protection than the United States Constitution demands.").

[11] *See ante* at 27-28.

[12] *Id.* at 32.

[13] But the law demands strict compliance with even technical requirements for serving process. For example, we recently vacated a default judgment where "the trial court's order authorized substitute service at a house number on '*Heathers* Hill Drive' . . . , and the return stated that service was executed at the same house number but on 'Heather *Hills* Drive' in Dripping Springs." *Spanton v. Bellah*, 612 S.W.3d 314, 318 (Tex. 2020); *see id.* at 317 ("Such deviances are certainly not trivial when the trial court has authorized substitute service."). If strict compliance is required for a misspelling even though service was actually made at the defendant's correct address, surely it is also required in guardianship proceedings involving a vulnerable class of people.

4

own legal decisions. The consequences are too great to risk [] haphazard" conformity with those protections.[14] In blessing less than strict adherence, the Court's decision exposes proposed wards to myriad varieties of chicanery in proceedings where they may be judicially determined to be incapacitated and incapable of protecting their own interests.[15]

The sick, elderly, and debilitated among us require and deserve meaningful protection. Their rights cannot and should not be sacrificed at the altar of judicial economy and administrative convenience. What the Legislature has given them, this Court has no right to take away.

We should hold that a failure to strictly comply with the heightened service requirements deprives the probate court of jurisdiction. Because the Court does not, I respectfully dissent.

John P. Devine
Justice

**OPINION DELIVERED:** March 4, 2022

---

[14] *Saldarriaga v. Saldarriaga*, 121 S.W.3d 493, 499 (Tex. App.—Austin 2003, no pet.).

[15] *See* TEX. EST. CODE § 1101.101(a)(1). All involved in *this* guardianship proceeding sought to act in the proposed ward's best interest, but, sadly, that is not true of all guardianship proceedings. In other cases, the consequences flowing from the rule the Court announces today could be grave.