In the GUARDIANSHIP OF the Person and Estate of Fannie G. JORDAN.

Nos. 09–10–00240–CV, 09–11–00019–CV, 09–10–00543–CV.

Court of Appeals of Texas, Beaumont.

Submitted on Feb. 16, 2011.

Submitted on June 16, 2011.

Decided July 28, 2011.

Trudie Jordan, Santa Fe, NM, pro se.

Charles Crews, Santa Fe, NM, pro se.

Kristin Bays, J. Randal Bays, Bays & Bays, William Fowler, Conroe, for appellee.

Before GAULTNEY, KREGER, and HORTON, JJ.

## OPINION

DAVID GAULTNEY, Justice.

The trial court signed an agreed guardianship order concerning Fannie G. Jordan. Eddy Jordan, Fannie's son, was appointed guardian of the estate, and Trudie Jordan, her daughter, was appointed guardian of the person. Later, Trudie effectively resigned, and Eddy was appointed successor guardian of the person.

Trudie has appealed three orders: the agreed order appointing Eddy as guardian of the estate; the order requiring marshaling of the assets of the estate; and the order naming Eddy as successor guardian of the person. We consolidate the three appeals in this opinion. We affirm the appointment orders. Because the order marshaling assets is not appealable at this time, we dismiss that appeal.

### PROCEEDINGS IN THE TRIAL COURT

Eddy Jordan filed an application to become the permanent guardian over the person and estate of his 92 year old mother, Fannie G. Jordan. He alleged Fannie was "incapacitated to care for herself, unable to manage her property and financial affairs, and without a legal guardian of her person and estate." The court appointed

an attorney ad litem to represent Fannie, and the attorney filed an answer for Fannie. Eddy and Trudie each filed a physician's certificate of medical examination, both by the same physician. One report states Fannie is "totally" incapacitated; the other states she is "partially" incapacitated. Both reports indicate Fannie has Alzheimer's disease, described as moderate to moderately severe with a poor prognosis. The parties stipulated that Fannie is incapacitated.

Trudie filed a "Contest of Appointment of Guardian" and requested that she be appointed guardian over the person and estate of Fannie if Fannie was found to be incapacitated. In a motion filed with the trial court, Trudie asserted, among other things, that Eddy lacked standing. *See* Tex. Prob.Code Ann. § 642(c) (West 2003). Eddy also filed a motion asserting that Trudie lacked standing. Trudie filed a document entitled "Declaration of Guardian in the Event of Later Incapacity or Need of Guardian[.]" Trudie contended that Fannie designated Trudie the guardian over her person and estate in this document and disqualified Eddy.

The competing motions were set for a hearing. Although Trudie did not attend the hearing, her counsel was present, and he represented her. Eddy and his attorney were present. Fannie was represented by the attorney ad litem. The parties announced ready, and the hearing began. Eddy provided testimony regarding Fannie's condition, the sale of her real estate by Trudie, and Trudie's disposition of the proceeds from the sale.

After a break in the proceeding, the attorneys announced on the record that the parties had reached an agreement. All parties stipulated that a guardianship over Fannie's person and estate was necessary. Eddy's attorney asked the court to take judicial notice of the physician's cer-tificate filed by Eddy regarding Fannie's incapacity. The parties agreed Eddy would serve as guardian of the estate, and Trudie would serve as guardian of the person. Trudie agreed to pay the attorney ad litem's fees. Eddy and Trudie were each to pay his or her own attorney fees. Trudie's counsel stated on the record, "We agree with what's been stated in the record, and we stipulate that Fannie Jordan is incapacitated." The attorney ad litem stated that she "absolutely agree[d] with the agreement," and believed it to be "in the best interest of Miss Fannie Jordan."

Reflecting the agreement the parties reached in court, the trial court's order made the findings required by the Probate Code. *See* Tex. Prob.Code Ann. § 684 (West 2003). Among other findings, the court found that Fannie was incapacitated, and that it was in her best interest to have the court appoint guardians of her person and estate. The trial court's order appointed Eddy guardian of the estate, appointed Trudie guardian of the person, stated that the term of guardianship was indefinite, ordered each party to pay his or her own attorney fees, and ordered Trudie to pay the attorney ad litem's fees. Counsel for all parties signed the agreed order. A few days later, Trudie qualified as guardian of the person by filing her oath and posting her bond.

## ISSUES IN APPEAL OF AGREED GUARDIANSHIP ORDER

Trudie presents various arguments in the appeal of the order setting up the guardianship: the trial court erred by signing the order based on the agreement of the parties without the requisite evidentiary showings under sections 684 and 685 of the Probate Code; Eddy lacked standing to file an application for guardianship or to contest a proposed appointment; a determination of standing should have

been made prior to the appointment of a guardian; the trial court erred by not adhering to the declaration of guardian made by Fannie; an order appointing a guardian is not a contract that can be ratified by a person's actions; and the trial court erred by finding Trudie responsible for the guardian ad litem's fees, by misconstruing the bond amount, by making the guardianship have an indefinite term, and by requiring Trudie to remit the remainder of the estate to the guardian of the estate. Trudie further argues she has standing to appeal the guardianship order. In her reply brief, she also contends the trial court lacked subject matter jurisdiction. *See* Tex. Prob.Code Ann. §§ 684, 685 (West 2003).

## CONSENT

 In her motion for new trial and on appeal, Trudie asserts that her attorney entered into the agreement without her consent. The court's April 1, 2010 written order comports with the parties' agreement as stated on the record during the March 25, 2010 hearing. The written order was signed by counsel of record for all parties. *See* Tex.R. Civ. P. 11. Generally, the act of the attorney of record in signing an agreed order is considered the client's act. *See In the Interest of R.B.,* 225 S.W.3d 798, 803 (Tex.App.-Fort Worth 2007, no pet.); *see also* Tex.R. Civ. P. Rules 8, 11. Normally a party's consent to an order precludes an appeal of the order. *See Boufaissal v. Boufaissal,* 251 S.W.3d 160, 161 (Tex.App.-Dallas 2008, no pet.); *see also Baw v. Baw,* 949 S.W.2d 764, 766 (Tex.App.-Dallas 1997, no writ). Moreover, at the July 15, 2010 hearing, Trudie's attorney expressly withdrew the motion for new trial from the trial court's consideration. Any complaint on appeal arguing lack of effective consent to the agreed order was not preserved. *See* Tex.R.App. P. 33.1.

## PERSONAL SERVICE

 In a reply brief, Trudie argues that the April 1, 2010 guardianship order is void. Citing *In the Guardianship of Erickson,* 208 S.W.3d 737 (Tex.App.-Texarkana 2006, no pet.), she argues that the failure to personally serve an application for guardianship on a proposed ward deprives the court of jurisdiction. *See id.* at 740 (Order appointing a permanent guardian was void, because statute requiring a specific waiting period before trial court action on the application was not complied with, thereby depriving the court of the power to act.). Section 633 of the Probate Code requires that, upon the filing of a guardianship application, the sheriff or other officer shall personally serve citation on a proposed ward who is 12 years of age or older. Tex. Prob.Code Ann. § 633(a),(c)(1) (West Supp. 2010). Relying on section 633 and case law, Trudie asserts that the proposed ward cannot waive the requirement of personal service of citation. *See Whatley v. Walker,* 302 S.W.3d 314, 321–22 (Tex.App.-Houston [14th Dist.] 2009, pet. denied); *In the Guardianship of Erickson,* 208 S.W.3d at 740, 743. Although section 633(e) allows a person "other than the proposed ward" to file a written waiver of service, no written waiver is authorized for personal service on a proposed ward. *See* Tex. Prob.Code §§ 633(e), 634(a) (West Supp. 2010). An applicant's use of a written waiver of service signed by someone the applicant alleges in the application to be incompetent does not suffice. *See Dyer v. Wall,* 645 S.W.2d 317, 318–19 (Tex.App.-Corpus Christi 1982, no writ). Trudie argues personal service on a proposed ward is mandatory and jurisdictional.

 Customarily, a party does not raise an issue for the first time on appeal

in a reply brief. *See McAlester Fuel Co. v. Smith Int'l, Inc.*, 257 S.W.3d 732, 737 (Tex. App.-Houston [1st Dist.] 2007, pet. denied); *see also* Tex.R.App. P. 38.3. Nevertheless, Trudie's argument that the order is void will be addressed despite Trudie's agreement to the order and despite her late assertion of the issue in a reply brief. *See Jarvis v. Feild*, 327 S.W.3d 918, 926 (Tex. App.-Corpus Christi 2010, no pet.). A void order is not susceptible of ratification or confirmation. *Easterline v. Bean*, 121 Tex. 327, 49 S.W.2d 427, 429 (1932).

The issue is one of compliance with service requirements. Service perfects the court's personal jurisdiction over the party. *See TAC Americas, Inc. v. Boothe*, 94 S.W.3d 315, 318–19 (Tex.App.-Austin 2002, no pet.). "Before a court may enter judgment against a party, the court must have obtained jurisdiction over that party pursuant to applicable rules or statutes." *Whatley*, 302 S.W.3d at 321; *see also Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex.1987); *In re Mask*, 198 S.W.3d 231, 235 (Tex.App.-San Antonio 2006, orig. proceeding). The constitutional right to due process of law restricts the ability of a court to render a judgment binding a party without proper notice. *See generally Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1027 (5th Cir.1982); *Mendoza v. Ramirez*, 336 S.W.3d 321, 327 (Tex.App.-El Paso 2010, pet. denied). The objective of service is to provide the notice reasonably calculated to inform the party of the pendency of an action so that she may have an opportunity to present her objections. *See generally Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 930 (Tex.1995) ("Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner.").

A party is entitled to a fair opportunity to appear and defend the party's interests. *See Sgitcovich v. Sgitcovich*, 150 Tex. 398, 241 S.W.2d 142, 146 (1951). A statutory requirement that someone be personally served refers to an actual delivery of the notice or process to the intended person. *See Wilson v. Dunn*, 800 S.W.2d 833, 834–37 (Tex.1990). Although personal service is a common method of providing notice of an action, both the Rules of Civil Procedure and the Probate Code authorize other forms of service under appropriate circumstances. *See* Tex.R. Civ. P. 21a; Tex. Prob.Code Ann. § 632 (West 2003). Section 632(d) of the Probate Code provides that on request of an interested party a person who cannot be cited by a specified method may be served in a manner that the court directs "in accordance with this chapter and the Texas Rules of Civil Procedure[.]" Tex. Prob.Code Ann. § 632(d). By its own provisions, the Probate Code provides for exceptions to a personal service requirement. Tex. Prob.Code Ann. § 632. Also, when a party files an answer and enters a general appearance, the purpose of the service requirement is met; generally, as Rule 121 provides, an answer dispenses with the necessity for the service of citation. *See* Tex.R. Civ. P. 121; *see also* Tex. Prob. Code Ann. § 34 (West 2003).

The record establishes that personal service on Fannie was attempted. Filed with the court, the return of citation for Fannie states as follows:

CONSTABLE'S RETURN

RETURN TO COURT UNSERVED

CAUSE # 09–26,530–P

CAME TO HAND ON November 4, 2009 AT 10:40am AND NOT EXECUTED. THE DILIGENCE USED TO EXCUTE BEING:

11–4–09 at 3:10pm I went to said address and found it to be vacant. I then called plaintiff's attorney and left a message. Plaintiff's attorney called back la-

ter and gave a new address as follows: 10272 Paradise Valley.

11–6–09 at 11:10am I went to 10272 Paradise Valley and received no answer at the front door. I then left a card on the door.

11–6–09 at 12:17pm I received a call from Trudie Jo Jordan who advised that she was at home. She also told me that she did not want her mother (Fannie G. Jordan) to see me because it may give her a heart attack. T. Jordan went on to tell me that she has the power of attorney for F. Jordan.

11–6–09 at 12:39pm I then called plaintiff's attorney office to ask if I could give F. Jordan's court papers to T. Jordan due to the power of attorney and the health of F. Jordan. There was no answer at the plaintiff' attorney's office. I tried a second time at 12:47pm and again received no answer.

11–6–09 at 12:50pm I went to said address and spoke to T. Jordan and a male subject who appeared to be a family member. Both subjects told me that they did not want F. Jordan to see me because of her health conditions. I then witnessed the power of attorney that T. Jordan had for F. Jordan and then gave F. Jordan's court papers to T. Jordan.

11–6–09 at 3:51pm I called the plaintiff' attorney's assistant (Laura Stockton) who told me that the power of attorney would not work and that I would need to hand deliver the court papers to F. Jordan. I then called T. Jordan who told me that she had already sent all court papers to her attorney in Houston. I then called the plaintiff's attorneys assistant back who told me that I would need to confirm with F. Jordan that she received the court papers either in person or by phone.

11–7–09 at 11:40am and at 11:55am I called the same phone number that I spoke to T. Jordan on 11–6–09 and received no answer. I left a voice message on the second call (505–603–5080).

11–9–09 at 12:15 pm I tried the above phone number and left a voice message.

11–9–09 at 12:40pm I went to 10272 Paradise Valley and received no answer at the front door. I then left a card on the front door.

Don Chumley

Constable Precinct 1

Montgomery County, Texas

By: S/ _____

 Deputy Constable

 Badge # 8201 Date: 11–19–09

The return reflects that Trudie would not permit the deputy constable to personally serve Fannie because of Fannie's health conditions. Fannie, who has moderate to severe dementia, was living with Trudie, and Trudie was taking care of Fannie. Trudie offered a power of attorney to the deputy constable attempting the service; she prevented personal service on Fannie and, in effect, accepted service on Fannie's behalf. During the litigation below, including various hearings, Trudie did not complain that Fannie had not been personally served with citation.

The trial court appointed an attorney ad litem to represent Fannie. Section 647 sets forth the duties of the attorney ad litem as follows:

(a) An attorney ad litem appointed under Section 646 of this code to represent a proposed ward shall, within a reasonable time before the hearing, interview the proposed ward. To the greatest extent possible, the attorney shall discuss with the proposed ward the law and facts of the case, the proposed ward's legal options regarding disposition of the case, and the grounds on which guardianship is sought.

(b) Before the hearing, the attorney shall review the application for guardianship, certificates of current physical, medical, and intellectual examinations, and all of the proposed ward's relevant medical, psychological, and intellectual testing records.

Tex. Prob.Code Ann. § 647 (West 2003). From the record of the March 25, 2010 hearing, it is apparent that the attorney ad litem visited with Fannie prior to the hearing. We presume the attorney, to the greatest extent possible, complied with the duties imposed by the statute. The attorney ad litem filed an answer on Fannie's behalf, participated in the proceedings on behalf of Fannie, and did not challenge the service of process or the court's jurisdiction over Fannie.

No party challenges the adequacy of the representation of Fannie's attorney who filed the answer and general appearance on her behalf. *See* Tex.R. Civ. P. 121; *Perfect Union Lodge No. 10 of San Antonio v. Interfirst Bank of San Antonio, N.A.,* 713 S.W.2d 391, 393 (Tex.App.-San Antonio 1986), *aff'd,* 748 S.W.2d 218 (Tex. 1988); *Bullock v. Land,* 443 S.W.2d 60, 61 (Tex.Civ.App.-Eastland 1969, writ ref'd n.r.e.) This is not a case in which a proposed ward has challenged a default judgment signed in her absence because of lack of personal service of process; were that the case, different considerations would apply. The record reflects that Fannie's interests have been properly protected and due process provided to her, and the court properly exercised jurisdiction over her person and property. *See generally Am. Gen. Fire & Cas. Co. v. Vandewater,* 907 S.W.2d 491, 492 (Tex.1995) ("[A]n appellate court should evaluate whether [a] minor's interests have been properly protected and whether a deficiency in notice or due process has been shown to determine whether a trial court has obtained personal jurisdiction over a minor.").

■ We do not believe Trudie may argue on her own behalf simply that service on Fannie was insufficient. Trudie has resigned as guardian. Trudie does not deny that she asserted authority to accept the court papers and provide them to Fannie, and Trudie does not deny that she fulfilled the duty she voluntarily assumed when she accepted the court papers for Fannie. Trudie agreed to the order she now attacks without suggesting to the trial court that there was any deficiency in the service. Requiring a party to present a complaint of error to the trial court gives the trial court an opportunity to rule on the issue or to correct its ruling if made in error. *See Lewis v. Tex. Employers' Ins. Ass'n,* 151 Tex. 95, 246 S.W.2d 599, 600 (1952). A party should not be allowed to waive, consent to, or neglect to complain about an error at trial and then surprise his opponent on appeal by stating the complaint for the first time. *See Pirtle v. Gregory,* 629 S.W.2d 919, 920 (Tex.1982); *see also generally Brooks v. Northglen Ass'n,* 141 S.W.3d 158, 162–63 (Tex.2004). By her pleadings and actions, Trudie represented to the trial court that Fannie was properly before the court; Fannie's answer reflects that she was, and Trudie is not in a position to claim the contrary in this appeal. *See* Tex.R.App. P. 33.1.

■ Waiver will not apply, however, to the argument that the trial court lacked subject matter jurisdiction. We therefore address the power of the trial court under these circumstances to bind parties over whom the trial court had personal jurisdiction. Trudie relies on the opinion in *Erickson. See In the Guardianship of Erickson,* 208 S.W.3d 737. The *Erickson* opinion relies on two earlier opinions dealing with jurisdiction and service. *See Ortiz v. Gutierrez,* 792 S.W.2d 118 (Tex.App.-San Antonio 1989, writ dism'd); *Threatt v.*

*Johnson,* 156 S.W. 1137 (Tex.Civ.App.-Texarkana 1913, no writ). Both *Ortiz* and *Threatt* take the position that a court exercising probate jurisdiction does not have the power to act without strict compliance with the probate statute. *Ortiz,* 792 S.W.2d at 119; *Threatt,* 156 S.W. at 1139. Although the proposed ward's attorney in *Ortiz* had filed several motions constituting an actual appearance of the proposed ward in the trial court, the court of appeals nevertheless held, over a persuasive dissent, that the requirement for personal service could "not be waived by appearance." *Ortiz,* 792 S.W.2d at 119. A person's filing an answer and appearing in court without challenging personal jurisdiction normally provides the court with jurisdiction over that person. As explained in *Ortiz,* however, the court in *Threatt* had previously held that "compliance with the statute is a condition precedent to the valid exercise of that power [to appoint a guardian] and is jurisdictional." *Ortiz,* 792 S.W.2d at 119 (citing *Threatt,* 156 S.W. at 1139). In *Erickson,* the court held, pursuant to section 633(f), that the trial court could not appoint a permanent guardian until the expiration of ten days after service of citation and notice. *Erickson,* 208 S.W.3d. at 740–43; *see also* Tex. Prob.Code Ann. § 633(f) (West Supp. 2010). The *Erickson* court noted that "[a]lmost 100 years ago, this Court stated of the guardianship jurisdictional requirements: 'compliance with the statute is a condition precedent to the valid exercise of the power, and is jurisdictional.'" *Id.* at 741 (quoting *Threatt,* 156 S.W. at 1139). The *Ortiz, Threatt,* and *Erickson* courts apparently treat compliance with the statute as essential to a trial court's power to bind parties who are before the court.

In *Dubai Petroleum Company v. Kazi,* the Texas Supreme Court addressed the effect of a lack of compliance with a statute on a trial court's subject matter jurisdiction. *See Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 75–77 (Tex.2000). The Court explained that because it was difficult to tell whether the parties satisfied the requisites of a particular statutory requirement, "it seems perverse to treat a judgment as perpetually void merely because the court or the parties made a good-faith mistake in interpreting the law." *Id.* at 76. Quoting the Restatement, the Court commented that "'the modern direction of policy is to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction.'" *Id.* (quoting Restatement (Second) of Judgments § 11 cmt. e, at 113 (1982)). The Court overruled its precedent that a failure to establish a statutory prerequisite deprived a court of subject matter jurisdiction. *Id.* (overruling *Mingus v. Wadley,* 115 Tex. 551, 285 S.W. 1084 (1926)).

After *Dubai,* the Supreme Court has repeatedly cautioned against assuming that a failure to comply with a mandatory statutory requirement deprives a court of subject matter jurisdiction. *See City of DeSoto, Tex. v. White,* 288 S.W.3d 389, 393–94 (Tex.2009); *Igal v. Brightstar Info. Tech. Grp., Inc.,* 250 S.W.3d 78, 83–84 (Tex.2008); *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser,* 140 S.W.3d 351, 358–65 (Tex.2004), *superseded by statute,* Tex. Gov't Code Ann. § 311.034 (West Supp. 2010). The Supreme Court has instead adopted an approach to issues of subject matter jurisdiction that is designed to reduce the possibility of delayed attacks alleging judgments are void. *See City of DeSoto,* 288 S.W.3d at 394; *Dubai Petroleum Co.,* 12 S.W.3d at 75–77. A mandatory statutory requirement is presumed not to be jurisdictional. *City of De Soto,* 288 S.W.3d at 394. That presumption may be "overcome only by clear legislative intent to the contrary." *Id.*

The Supreme Court's decisions in *Dubai* and its progeny place Trudie's arguments in question. There is no real dispute that Fannie is an incapacitated person in need of a guardian. The Texas Probate Code gives courts exercising original probate jurisdiction the authority to appoint guardians for incapacitated persons. Tex. Prob.Code Ann. § 605 (West 2003), § 606 (West Supp. 2010). The trial court that rendered the agreed guardianship order is one authorized to exercise original probate jurisdiction. Tex. Gov't Code Ann. §§ 25.0003, 25.1721 (West Supp. 2010), § 25.1722 (West 2004); Tex. Prob.Code Ann. §§ 4A–4E, 606 (West Supp. 2010). The Probate Code has sections that expressly address jurisdiction of the court, and under those provisions, the trial court had probate jurisdiction to sign an order appointing a guardian for an incapacitated person before the court. Tex. Prob.Code Ann. §§ 4A–4E, 606(c). We see no clear legislative intent that compliance with a specific method of obtaining a person's presence in court is necessary to confer subject matter jurisdiction to bind parties who have made appearances in court. We hold that the trial court had the authority to appoint guardians over the person and estate of Fannie G. Jordan.[1]

GUARDIANSHIP HEARING, STANDING,
& QUALIFICATION

Trudie also argues that proper probate procedure requires that standing be determined "via a Motion in Limine" and through an evidentiary hearing regarding an applicant's qualifications to be guardian. *See* Tex. Prob.Code Ann. § 642(c). She asserts that the court did not comply with the statutory requirements of sections 684 and 685, and that Eddy has an interest that is adverse to Fannie's estate. *See id.* §§ 684, 685.

The March 25, 2010 hearing was for the purpose of considering the matters alleged in Eddy's and Trudie's competing motions challenging standing. During the hearing, the parties reached an agreement on the guardianship issues, and the trial court approved the agreement by written order. Though she had filed a contest to Eddy's application, Trudie abandoned her contest when she entered into the agreement. She cannot now complain of what she abandoned or agreed to below.

1. A supplemental clerk's record, filed with this Court on July 19, 2011, reflects that the successor to the trial judge signed a June 15, 2011 order which attempted to rule on the issue under submission in this Court. The June 15 order purported to vacate "any orders in this cause of action naming a guardian for Fannie Jordan[,]" because the successor judge concluded that "proper service on the proposed ward ... was not achieved before the order appointing the guardian was signed and letters issued." The agreed order establishing a guardianship was a final, appealable order, and the order was timely appealed to this Court. *See* Tex.R.App. P. 25.1; *see Crowson v. Wakeham*, 897 S.W.2d 779, 783 (Tex.1995). The trial court had continuing jurisdiction over those probate matters that were not implicated in the appeal. *See Whatley v. Walker*, 302 S.W.3d 314, 324 (Tex. App.-Houston [14th Dist.] 2009, pet. denied).

But the perfection of the appeal invoked this Court's jurisdiction over the order establishing a guardianship. *See* Tex.R.App. P. 25.1. At that point, this Court acquired exclusive jurisdiction over the controversy in the appeal. *See Robertson v. Ranger Ins. Co.*, 689 S.W.2d 209, 210 (Tex.1985). Thereafter, the trial court's power to vacate the agreed order was limited to situations expressly permitted by statute or procedural rule. *See, e.g.,* Tex.R. Civ. P. 329b(d), (e). Otherwise, the judgment could not be set aside by the trial court while it was under consideration by this Court. *See* Tex.R. Civ. P. 329b(f). Judicial action taken by a trial court after the expiration of the trial court's jurisdiction is a nullity. *See State ex rel. Latty v. Owens*, 907 S.W.2d 484, 486 (Tex. 1995). The trial court's order of June 15, 2011, signed while this Court maintained exclusive jurisdiction, is of no effect.

Section 684 sets out the findings the trial court must make before appointing a guardian. Tex. Prob.Code Ann. § 684. Those findings are reflected in the court's order appointing Eddy as guardian of the estate and Trudie as guardian of the person. Section 685 provides that at the hearing on the application for guardianship, the trial court shall make various inquiries concerning the proposed ward and her ability to manage her physical and financial affairs and the qualifications of those applying to be guardians. Tex. Prob.Code Ann. § 685. In considering the physician's certificates, Eddy's testimony, and the comments of the attorney ad litem, the trial court satisfied these requirements.

## DECLARATION OF GUARDIAN

 Trudie argues the trial court erred in disregarding the "Declaration of Guardian in the Event of Later Incapacity or Need of Guardian." Trudie states that Fannie designated Trudie as guardian of Fannie's person and estate in the document and specifically excluded Eddy. Trudie asserts that Fannie signed the declaration "well before" the physician stated Fannie was incapacitated. Trudie later entered into the agreement to appoint Eddy as guardian of the estate and herself as guardian of the person. She waived the argument she now makes on appeal.

## RATIFICATION

 Trudie argues that orders appointing guardians are not contracts which can be ratified by actions in conformity therewith. The record supports a finding of consent, and Trudie never requested a hearing or urged her motion for new trial to establish her claim of lack of consent to the order. She may not complain about an issue to which she agreed in the trial court. See Tex.R.App. P. 33.1.

## BOND, GUARDIAN AD LITEM FEES, REMITTANCE OF ESTATE FUNDS TO EDDY, AND INDEFINITE TERM OF GUARDIANSHIP

Trudie apparently contends that the $1,000 bond for Eddy as guardian of the estate is too low. A guardian may be required to give a new bond when, among other reasons, "the amount of the bond is insufficient[.]" Tex. Prob.Code Ann. § 711 (West 2003). Under the circumstances, the proper remedy for an insufficient bond is to petition the trial court for a new bond. See id. § 712 (West 2003) ("A person interested in a guardianship may allege, on application in writing ... that the guardian's bond is insufficient ... and may cause the guardian to be cited to appear and show cause why the guardian should not give a new bond.)"

Trudie argues that since Eddy was appointed guardian of the estate, he should be responsible for the attorney ad litem fees. She also asserts there was error in requiring her to remit the $9,800 of estate funds to Eddy. At the March 25, 2010 hearing, Trudie, through her attorney, agreed to pay the ad litem fees and to remit the funds in question to the estate. The parties stipulated that a $9,800 check made payable to Amegy Bank would be delivered to Eddy. The trial court's order reflects the parties' agreement.

Trudie argues the guardianship order, which provides for an indefinite term, is "clear error[ ]" that makes the Agreed Order "void as a matter of law[.]" A temporary guardianship expires by law in sixty days unless extended by the trial court. See Tex. Prob.Code Ann. § 875(h), (k), (l) (West Supp. 2010). Eddy's guardianship application is an application for a permanent guardianship, not a temporary one. A permanent guardianship, unlike a temporary guardianship, has no similar timing restriction. See id. §§ 745, 875(h), (k), (l)

(West Supp. 2010). The limits to the duration of a permanent guardianship are those set out by the Probate Code in section 745(a). Those duration limitations include, among other things, the ward's death, restoration of the incapacitated ward to capacity, or any reason that the court determines that a guardianship for the ward is no longer necessary. *See id.* § 745(a). Trudie's issues in the appeal of the initial guardianship order in Cause No. 09–10–00240–CV are overruled.

### APPEAL OF ORDER MARSHALING ASSETS OF ESTATE

Eddy filed a motion to marshal estate assets "[h]eld by [o]thers[.]" Trudie and her adult son, Charles Crews, filed a response. The trial court granted Eddy's motion. Trudie appealed the order.

■ Trudie and Charles Crews contend that there is a federal stay in Charles's bankruptcy petition, which lists, among others, the Estate of Fannie Jordan and Eddy Jordan as creditors, and which lists as exempt various personal property items, some of which Trudie listed in her accounting as belonging to Fannie. The filing of a bankruptcy petition triggers an automatic stay under the bankruptcy code. *See* 11 U.S.C.A. § 362 (West 2004 & Supp. 2010). An automatic stay deprives state courts of jurisdiction over proceedings against the debtor, and any action taken against the debtor while the stay is in place is void and without effect. *In re Sensitive Care, Inc.,* 28 S.W.3d 35, 38–39 (Tex.App.-Fort Worth 2000, orig. proceeding); *see also Howell v. Thompson,* 839 S.W.2d 92 (Tex.1992).

■ The order marshaling the assets of the guardianship does not take any action against Charles Crews. Though Charles is referenced in the motion to marshal assets and though he filed a joint response with Trudie, the order granting Eddy's motion does not order Charles to marshal any assets or turn over any property. The court specifically ordered Trudie not to remove Fannie from Montgomery County, without first seeking and obtaining the trial court's permission, and ordered Trudie not to sell, convey, transfer, encumber or remove from Montgomery County (without first obtaining the trial court's permission) any of the items of personal property (listed in Trudie's accounting) purchased with funds obtained from the sale of Fannie's house. The order also directs that if any funds held by Ron and Charlotte Casso (lessors of the home in which Trudie and Fannie resided) are owed to Trudie, Fannie, or an entity named Gearhardt Enterprises by virtue of the tenancy at the house, those funds are to be paid into the registry of the court and may not be paid to Trudie, Fannie, or Gearhardt Enterprises. Finally, the order stated that the ownership of the items of personal property appearing in Trudie's accounting or of any funds which may be paid into the court's registry by Ron Casso and/or Charlotte Casso would be determined by the trial court at a later date. The order does not direct Charles to marshal assets.

Trudie apparently contends that she did not receive notice of the hearing on the motion to marshal assets but she attended the hearing. Her presence at the hearing suggests she had notice. In the absence of any complaint in the trial court challenging the adequacy of the notice, she waived the complaint. *See* Tex.R.App. P. 33.1. She also asserts that she did not receive a copy of the order before the trial judge signed the order. Trudie did not complain of lack of service of the proposed order in the trial court, and has waived that complaint. *See id.*

■ In a guardianship proceeding, a party may appeal a "final order." *See* Tex.

Prob.Code Ann. § 4A(c) (West Supp. 2010) (applying generally to probate orders); *id.* § 606(g) (West Supp. 2010) (applying specifically to guardianship proceedings). An order in a guardianship proceeding is final if it disposes "of all parties or issues in a particular phase of the proceedings." *Brittingham–Sada de Ayala v. Mackie,* 193 S.W.3d 575, 579 (Tex.2006). " '[I]f there is a proceeding of which the order in question may logically be considered a part, but one or more pleadings also part of that proceeding raise issues or parties not disposed of,' " the order is not final. *Id.* at 578 (quoting *Crowson v. Wakeham,* 897 S.W.2d 779, 783 (Tex.1995)). Eddy has filed an inventory declaring the assets of the estate, but the trial court has not yet approved the inventory. The order marshaling the assets does not dispose of the assets and does not determine final ownership of the assets in question. As noted, the order prohibits Trudie from disposing of items of personal property listed on Trudie's inventory of Fannie's estate unless she first obtains the trial court's permission. Further proceedings must determine ownership issues.

The order marshaling assets does not rule on a substantial question in the estate, is not a discrete phase of the guardianship, and does not dispose of all parties or issues in a particular phase of the proceedings. *See generally In re Maryanne Mitchell,* 342 S.W.3d 186, 192 (Tex.App.-El Paso 2011, orig. proceeding) ("An order requiring the deposit of funds as security for costs is not a final order" under the test in *De Ayala.*). No ownership has been determined. The ruling directing the marshaling of the assets sets the stage for later rulings relating to the ownership and availability of the assets. We conclude the order is not a final, appealable order, because it does not dispose of all claims and parties in the relevant phase of the guard-

ianship proceeding. The appeal in cause No. 09–10–00543–CV must be dismissed.

## APPEAL OF ORDER APPOINTING SUCCESSOR GUARDIAN OF THE PERSON

Contained in the record are November 2010 emails from Trudie stating that she was going to take a " 'leave of absence' " as caregiver for her mother and then later asking Eddy's attorney to "put together a new order that has Eddy as Guardian of the Estate and of the person...." The record reflects that Trudie stopped being Fannie's caregiver, and Trudie turned over care of Fannie to Eddy.

Eddy filed an "Emergency Application for TRO, Temporary Injunction, Permanent Injunction, and Appointment of Successor Guardian of Person of Fannie G. Jordan." He asserted that Trudie abandoned Fannie to his care, moved without notice, and effectively resigned as guardian of the person. The trial court held a hearing on the motion. Trudie was not present. After hearing Eddy's testimony and considering Trudie's emails, the trial court removed Trudie as successor guardian of Fannie's person and appointed Eddy as successor guardian of the person. Eddy subsequently filed his oath and bond.

Trudie appeals from the order appointing Eddy successor guardian of the person of Fannie Jordan. Trudie argues that she did not have notice of the hearing on the appointment of a successor guardian, that Eddy is disqualified from being guardian, and that her pending motion to recuse precluded the trial judge from signing the order appointing Eddy as guardian of the estate.

## NOTICE

The certificate of service, stating Trudie was served by hand-delivery, is prima facie proof of service. *See* Tex.R. Civ. P. 21a; *In re E.A.,* 287 S.W.3d 1, 5 (Tex.2009).

Although the certificate of service indicates that service was also given by facsimile and email, Eddy states on appeal that emails and faxes are not valid forms of service under Rule 21a. Trudie argues that the in-hand delivery involved leaving the motion "haphazardly ... at a Pac and Mail during the Christmas Holidays ... unposted, un mailed and left for a stranger to retrieve along with the other envelopes left for Trudie[.]"

An email, sent on Charles Crews's email account to the trial court the day before the hearing at 5:56 a.m., states as follows:

[Eddy's attorney] has not notified Trudie Jordan of the hearing tomorrow in [the trial judge's] court. The envelopes with the notice unpostmarked were found at Mail and More by a customer and the owner said he just dropped them off did not pay for postage and left and the service is invalid. Since she has moved she has not had email or fax since 12–12–2010. No service at these mediums were possible either. She has her mail forwarded from the address he claims to have given service is 1253 miles away in Santa Fe, NM has no copy of his briefs or information on the proceeding and will not be present. I am filing this with the court today In the Guardianship of Fannie Jordan and hope for your professionalism in judicial fairness as she has not had proper service of this hearing and will not be present nor has any attorney that assists been contacted.

Charles Crews

From the same email address, another email was sent later that day which stated that "Trudie Jordan will not be in attendance tomorrow as she did not get the documents or notice of the hearing the originals are filed in the case."

Section 695(a) of the Probate Code provides that "[if] a guardian dies, resigns, or is removed, the court may, on application and on service of notice as directed by the court, appoint a successor guardian. On a finding that a necessity for the immediate appointment of a successor guardian exists, the court may appoint a successor guardian without citation or notice." Tex. Prob.Code Ann. § 695(a) (West Supp. 2011). There is evidence in the record that Fannie needs care "24 hours a day." In Eddy's affidavit attached to his application to be appointed successor guardian, he states that when Julie Jordan, Eddy's daughter, arrived at the home occupied by Trudie and Fannie on November 20, 2010, Trudie met Julie outside, placed Fannie in Julie's car with a suitcase, and told Julie to take care of Fannie. The day before, Trudie had emailed Eddy that she was taking a " 'leave of absence' " as the care provider for Fannie. When Julie arrived with Fannie at Eddy's home, Eddy became concerned about Fannie's health. Apparently Fannie was hospitalized for a few days with issues of dehydration, over-medication, and a fractured finger and bone in her hand. Eddy stated that Fannie "is in need of constant care, and, after Trudie's abandonment, I have been the one to provide that care."

Eddy explained that he needed to be appointed guardian of the person in order to take Fannie to her doctor visits. Although the order appointing Eddy as successor guardian does not specifically state that a necessity exists for immediate appointment, the order finds Fannie "is without capacity to manage her person or her property[ ]" and that the guardian of the person had resigned. The record demonstrates the necessity for the immediate appointment of a successor guardian.

Trudie also argues that Eddy is disqualified from serving as Fannie's guardian. She filed in the record a check register, bank statement and check, a promissory

note, and a *lis pendens*, all of which reference transactions that occurred prior to the guardianship. When Trudie submitted her resignation by email, she requested that Eddy be appointed guardian of the person. The record does not support Trudie's argument.

### RECUSAL

Trudie argues that the trial judge could not act on the motion to appoint a successor guardian because a recusal motion was pending. The motion is not verified. Rule 18a of the Texas Rules of Civil Procedure requires that a recusal motion be verified. *See* Tex.R. Civ. P. 18a(a). When a party fails to comply with the requirements of Rule 18a(a), she waives her right to complain of a judge's failure to recuse himself. *McElwee v. McElwee*, 911 S.W.2d 182, 186 (Tex.App.-Houston [1st Dist.] 1995, writ denied). We overrule Trudie's issues in the appeal of the order appointing Eddy as successor guardian of Fannie's person.

We have considered appellee's motion to dismiss the appeal and appellant's response as additional briefing in this case. Given our resolution of the issues in this opinion we do not further address the motion. We affirm the trial court's orders in appeals numbered 09–10–00240–CV and 09–11–00019–CV. We dismiss appeal number 09–10–00543–CV for lack of jurisdiction.

AFFIRMED IN PART; DISMISSED IN PART.